## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

VICTOR ELIAS PHOTOGRAPHY, LLC,

        Plaintiff,

    v.

ICE PORTAL, INC. and SHIJI (US), INC.,

        Defendant.

C.A. NO. 0:19-cv-62173-RS

---

## DEFENDANT SHIJI (US), INC'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Karen Chuang Kline (FL Bar No. 59998)
kckline@duanemorris.com
DUANE MORRIS LLP
1875 NW Corporate Boulevard
Suite 300
Boca Raton, FL 33431-8561
Tel:     561-962-2100
Fax:     561-962-2101

*and*

David J. Wolfsohn (PA Bar No. 57974)
djwolfsohn@duanemorris.com
*(admitted pro hac vice)*
Kendra C. Oxholm (PA Bar No. 325621)
*(admitted pro hac vice)*
kcoxholm@duanemorris.com
Tyler R. Marandola (PA Bar No. 313585)
*(admitted pro hac vice)*
tmarandola@duanemorris.com
DUANE MORRIS LLP
30 S. 17th Street
Philadelphia, PA 19103
Tel:     215-979-1000
Fax:     215-689-2739

*Attorneys for Defendant,*
*Shiji Americas on behalf of Defendant ICE Portal*

# TABLE OF CONTENTS

**Page**

I.     UNDISPUTED FACTS ...................................................................................3

      A.     ELIAS Was Paid to License Starwood and Wyndham Photos for the Express Purpose of Having Them Be Displayed on OTAs. .................................. 3

      B.     ICE Portal Was Hired by Starwood and Wyndham to Make their Photos Available to OTAs and Modify them as Needed. .................................................... 4

      C.     Between 2013 and 2018, ICE Portal's System Did Not Use or "Look For" Information in the Extended Attributes of Photos It Received. ............................. 5

      D.     Other than Three of the At-Issue Photos, There is No Evidence that the Files Received by ICE Portal contained CMI in the Extended Attributes. ............. 7

      E.     There is no Evidence that the Use of ELIAS's At-Issue Photos by OTAs Induced, Enabled, or Facilitated Copyright Infringement. ..................................... 8

II.    LEGAL STANDARD ...................................................................................10

III.   ARGUMENT ...............................................................................................11

      A.     ICE Portal Did not Know or Have Reason to Know that Removal of CMI Would Induce, Enable, Facilitate, or Conceal Infringement. ............................... 12

      B.     There is no Evidence From Which a Reasonable Jury Could Conclude That ICE Portal Intended to Remove CMI. ......................................................... 16

      C.     There is no Genuine Issue of Fact as to Whether ICE Portal Removed CMI "Without the Authority of the Copyright Owner." ...................................... 18

IV.   CONCLUSION ............................................................................................20

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)................................................................................................................10

*Daniels v. Felton*,
  823 Fed. Appx. 787 (11th Cir. 2020)......................................................................................10

*Fey v. Panacea Management Grp. LLC*,
  261 F. Supp. 3d 1297 (N.D. Ga. 2017)...................................................................................17

*Gordon v. Nextel Communications*,
  345 F.3d 922 (6th Cir. 2003)...................................................................................................19

*Kee v. National Reserve Life Ins. Co.*,
  918 F.2d 1538 (11th Cir. 1990) ...............................................................................................10

*Kelly v. Arriba Soft Corp.*,
  77 F. Supp. 2d 1116 (C.D. Cal. 1999) .....................................................................................17

*Mango v. BuzzFeed, Inc.*,
  970 F.3d 167 (2d Cir. 2020)....................................................................................................11

*Owen v. I.C. System, Inc.*,
  629 F.3d 1263 (11th Cir. 2011) ...............................................................................................10

*Philpot v. WOS, Inc.*,
  2019 WL 1767208 (W.D. Tex. Apr. 22, 2019)........................................................... 11, 16-17

*Photographic Illustrators Corp. v. Orgill, Inc.*,
  118 F. Supp. 3d 398 (D. Mass. 2015) ......................................................................................18

*Stevens v. Corelogic, Inc.*,
  194 F. Supp. 3d 1046 (S.D. Cal. 2016), *affd*, 893 F.3d 648 (9th Cir. 2018) .........11, 17, 18, 20

*Stevens v. CoreLogic, Inc.*,
  899 F.3d 666 (9th Cir. 2018) ..........................................................................1, 12, 13, 14, 15

*Teleprompter Corp. v. Columbia Broadcasting Sys., Inc.*,
  415 U.S. 394 (1974).................................................................................................................15

*United Specialty Ins. Co. v. Davis*,
  2020 WL 1445484 (S.D. Fla. Feb. 19, 2020) .........................................................................10

*Wilchombe v. TeeVee Toons, Inc.*,
  555 F.3d 949 (11th Cir. 2009) ................................................................................................20

**Statutes and Rules**

17 U.S.C. § 1202..........................................................................................................11,16, 18, 19

Rule 56..............................................................................................................................................10

This case is characterized by the startling lack of evidence supporting several requisite elements of ELIAS's single claim under the Digital Millennium Copyright Act. Accordingly, summary judgment should be entered against Victor Elias Photography, LLC ("ELIAS").

Online travel agents (called "OTAs"), like Expedia and Travelocity, are one-stop shops for travelers to search for hotel rooms across brands and price ranges. To market the properties on their platforms, OTAs display dozens of photos of each hotel. Defendant Shiji (US), Inc. ("Shiji") is an intermediary between hotel chains, like Wyndham and Starwood, and OTAs. Shiji, through its ICE Portal division, uses automated software to obtain images from hotel chains, process them for display on the internet, and make them available to its OTA clients.

ELIAS was paid over $100,000 from 2013 to 2017 to take promotional photos of eleven hotels operated under the Starwood or Wyndham brands. The entire point of hiring ELIAS was for the hotels to obtain photos to market the hotels, including on OTAs and elsewhere on the internet. That is why ELIAS granted broad licenses to the hotels to use those photos forever, in virtually unlimited media, and in unlimited quantities. And ELIAS did so knowing that the hotels would use a company like Shiji to process and make the photos available to OTAs. Yet now, years after granting these broad license agreements, ELIAS claims that Shiji violated the DMCA by "intentionally removing" its name and copyright notice ("copyright management information" or "CMI") embedded in hidden data fields within the photo files, invisible to anyone who does not know how and where to find them. ELIAS brought this claim despite the fact that the license agreements never mentioned CMI or prohibited its removal.

ELIAS's claim fails because the DMCA does not extend to this sort of "gotcha" claim. A claim for removal of copyright management information requires both that the *defendant knew about and intentionally removed* the CMI *without the authority of the copyright owner*, **and** that

the defendant *did so having reason to know that removal of the information would "induce, enable, facilitate, or conceal" copyright infringement*. As the Ninth Circuit Court of Appeals held under virtually identical circumstances, where the defendant itself did not commit any copyright infringement, that standard can only be met with "specific evidence" that removal will actually cause a third party to infringe or conceal a third party's infringement. *Stevens v. CoreLogic, Inc.*, 899 F.3d 666, 675 (9th Cir. 2018). Because, like in *Stevens*, ELIAS does not allege that Shiji or the OTAs committed any copyright infringement even if ELIAS could show that Shiji intentionally removed CMI from its photos without authority—and it cannot—it would need to produce specific evidence that Shiji had reason to know that doing so would aid or conceal copyright infringement by a third party. ELIAS has no such evidence. To the contrary, ELIAS understood that the hotels would use its photos virtually anywhere on the internet and such use would *not* be infringing. ELIAS has no proof of even a *single* instance in which a purported infringer copied an ELIAS photo from an OTA website. Nor is there evidence that Shiji somehow should have been aware, at the time it would have made certain ELIAS photos available, that displaying the photos on OTAs without ELIAS's hidden CMI would have made infringement by some third party more likely. Moreover, ELIAS has provided no evidence that it ever needed hidden CMI to identify infringements during any time relevant to this case, much less that Shiji had "reason to know" that it did. Thus there is no evidence from which a reasonable jury could conclude that Shiji knew or had reason to know that (1) displaying ELIAS' photos on OTAs without CMI in the extended attributes would promote infringement or that (2) displaying those photos without CMI in the extended attributes would conceal infringement.

Beyond the lack of evidence of any infringement arising from the alleged removal of ELIAS's CMI, ELIAS lacks evidence necessary to support other elements of its claim.

Specifically, there is no creditable evidence in the record that Shiji knew ELIAS's photos contained hidden CMI so no reasonable jury could conclude that Shiji acted "intentionally" in allegedly removing it. ELIAS also has not shown that Shiji removed ELIAS's CMI "without authorization" because the licenses ELIAS granted to the hotels do not prohibit the removal of ELIAS's hidden CMI. These failures of proof warrant summary judgment in Shiji's favor.

## I.   UNDISPUTED FACTS

### A.   ELIAS Was Paid to License Starwood and Wyndham Photos for the Express Purpose of Having Them Be Displayed on OTAs.

Between 2013 and 2017, Victor Elias was paid to take the photos shown in Exhibit A to the Amended Complaint, which he licensed through ELIAS to ten Starwood hotels and one Wyndham hotel. Defendant's Statement of Material Facts ("DSMF") ¶¶ 2-3.[1] ELIAS provided the image files for the photos to each licensed Starwood and Wyndham hotel. DSMF ¶ 4. According to ELIAS, it inserted information into the extended attributes embedded in the photo files, including "Victor Elias" in the "Creator" field and "@Victor Elias" in the "Copyright Notice" field. DSMF ¶ 5. The term "extended attributes" refers to a type of "metadata"—specifically, information embedded within an image file that can be accessed by saving the file, right-clicking on it, and then opening the "properties" window. DSMF ¶ 21. Extended attributes are not visible as part of an image. DSMF ¶ 22.

None of ELIAS's licenses to the Starwood or Wyndham hotels referenced "metadata" or "extended attributes," or required the hotels to maintain any such information in the extended attributes of the photos. DSMF ¶¶ 49-56. The licenses granted by ELIAS were broad, allowing

---

[1] The Amended Complaint refers to a twelfth property, the Marriott Casa Magna Puerto Vallarta. ECF 11-1 at 17-18. ICE Portal has never managed photos for Marriott. DSMF ¶ 13. Elias has adduced no evidence to the contrary, and, on this ground alone, summary judgment should be entered with regard to the Marriott Casa Magna photos.

the hotels to use the photos, in unlimited quantities and forever, to promote the hotels in print, online (including on OTAs), and in virtually any format. DSMF ¶¶ 49-56.

ELIAS knew that its photos would be modified and reformatted for display online. Indeed, ELIAS has entered into licensing agreements with hotels that expressly permit them to "alter, edit, retouch, and create derivative works" of the photos for use in "all media" without giving ELIAS any credit. DSMF ¶ 55. ELIAS also knew and expected that its photos would be displayed on OTAs like Expedia and Travelocity. DSMF ¶¶ 6-7. And ELIAS had no reasonable expectation that OTAs would display copies of its photos with copyright information embedded in the extended attributes. Mr. Elias testified that he has never seen *any* image on *any* OTA displayed with CMI in the extended attributes and he does not know whether any of his images has ever appeared on any OTA with CMI in the extended attributes. DSMF ¶ 56.

ELIAS also was aware that the licenses with the Starwood and Wyndham hotels did not require them to keep CMI in the extended attributes. In April 2018—just before ELIAS filed its initial lawsuit against ICE Portal—following the merger of Marriott and Starwood, Marriott asked ELIAS to provide copies of the licenses in effect for all of ELIAS's Starwood photos. DSMF ¶ 57. Rather than sending the original licenses, Mr. Elias sent Marriott licenses that inserted a new term that was not in the real licenses that were in effect: "All metadata within the images when provided by Licensor shall remain intact." DSMF ¶¶ 57-58.

### B.    ICE Portal Was Hired by Starwood and Wyndham to Make their Photos Available to OTAs and Modify them as Needed.

ICE Portal acts as an intermediary between hotel chains (the "hotel suppliers") and OTAs that market hotel rooms for online booking.[2] DSMF ¶ 9. From 2009-2017, Starwood contracted

---

[2] Shiji is the successor to ICE Portal, Inc. via a merger in 2019. DSMF ¶ 8. This memorandum uses "Shiji" and "ICE Portal" interchangeably.

with ICE Portal to make available to OTAs copies images of more than 1,400 Starwood hotel properties. DSMF ¶ 11. From 2014 to the present, Wyndham has contracted with ICE Portal to make available to OTAs copies of photos for more than 8,000 Wyndham hotel properties. DSMF ¶ 12. In total, ICE Portal has approximately 1.5 million different hotel images in its system. DSMF ¶ 10.

Given the enormous volume of photos handled by ICE Portal, the Master Services Agreements ("MSAs") between it and Starwood and it and Wyndham provided that the hotel chains were responsible for ensuring that the photos they provided were cleared for processing and display by OTAs. DSMF ¶¶ 59-66. For example, the MSAs stated that Starwood and Wyndham "shall have sole responsibility for the . . . intellectual property ownership or right to use of any" of the photos provided to ICE Portal. DSMF ¶¶ 63, 65. They further represented and warranted that the hotel chains had the right to grant ICE Portal a license to use and modify the photos, and that such use would not infringe any third party's rights. DSMF ¶¶ 63, 65. The MSAs gave ICE Portal the right to alter the photos in any manner for display on OTAs by granting it a "non-exclusive, royalty-free, worldwide" license to "use, copy, store, modify (including standardize, optimize, crop or otherwise reformat for distribution), distribute, . . . and display (publicly or otherwise)" any photo provided to ICE Portal. DSMF ¶¶ 62, 64.

### C.      Between 2013 and 2018, ICE Portal's System Did Not Use or "Look For" Information in the Extended Attributes of Photos It Received.

In the 2013-2017 time period for Starwood and the 2014-2018 time period for Wyndham, ICE Portal's process for handling photos from Starwood and Wyndham was the same in all relevant respects.[3] ICE Portal's automated software downloaded copies of the image files from

_____

[3] 2013-2018 is the time period relevant to this case. All of the at-issue Starwood photos were taken by ELIAS between 2013 and 2017. DSMF ¶ 2. All of the Starwood photos would have been removed from ICE Portal's system by the end of 2017 when Starwood terminated its

Starwood and Wyndham's servers onto ICE Portal's server. DSMF ¶ 15. Each image file came with a separate spreadsheet file, known as the "metadata file," containing information the OTAs needed to describe the photos on their websites, such as the room type and a caption. DSMF ¶ 16. After obtaining a copy of the image file and the associated metadata file, ICE Portal's automated software would make JPEG copies of the photos in various "industry standard" sizes optimized for faster display by OTAs on the internet. DSMF ¶ 17. The downsized copies were then saved on ICE Portal's server, along with the associated metadata files, and made available for access by OTAs if they chose to access them. DSMF ¶ 18. ICE Portal does not know whether any OTA actually displays any particular file it makes available to OTAs. DSMF ¶ 19.

Before this year, it was not part of ICE Portal's process for ICE Portal's automated software or its employees to check to see if any image files contained anything in the extended attributes. DSMF ¶¶ 23, 77. That is because extended attributes were not relevant to the business needs of the hotel suppliers, the OTAs, or to ICE Portal. DSMF ¶¶ 23-30. Any image-related information relevant to the OTAs (i.e., for booking a room) was included in the separate spreadsheet-like "metadata file." DSMF ¶ 25.

No hotel supplier or OTA has ever asked ICE Portal to include photographer information in the separate metadata file or to preserve extended attributes in the copies of the images that are made available to OTAs. DSMF ¶¶ 26-27. Other than in connection with this litigation, before this year, no hotel supplier or OTA has ever even mentioned extended attributes to ICE Portal.[4]

---

relationship with ICE Portal. DSMF ¶ 33. The at-issue Wyndham photos were taken by ELIAS in 2015. DSMF ¶ 3. All of the Wyndham photos were disabled in ICE Portal's system (meaning that they were no longer available to OTAs) as of September 14, 2018. DSMF ¶ 31.

[4] In 2020, Radisson asked ICE Portal to extract information from the extended attributes and display it in a location where Radisson can view and edit it. DSMF ¶ 76. Accordingly, ICE Portal wrote new software for that purpose. DSMF ¶¶ 76-77. Radisson did not, however, ask for extended attributes to be preserved in copies made available to OTAs. DSMF ¶ 78.

DSMF ¶ 28. Likewise, other than Victor Elias in connection with this litigation, no photographer or copyright owner has ever asked ICE Portal to preserve extended attributes in the copies of photos made available to OTAs or claimed that copyright information embedded in the extended attributes is somehow used to prevent or find infringement. DSMF ¶¶ 29-30.[5]

**D.     Other than Three of the At-Issue Photos, There is No Evidence that the Files Received by ICE Portal contained CMI in the Extended Attributes.**

ELIAS provided the image files directly to each hotel property, not to Starwood or Wyndham's corporate offices or to ICE Portal. DSMF ¶¶ 4, 14. As to the ten at-issue Wyndham photos, only three of the files, as saved on ICE Portal's server, contained any information in the "copyright" field in the extended attributes. DSMF ¶¶ 31-32. As to the at-issue Starwood photos, there is no record of whether any of the image files contained information in the extended attributes because those files were removed from ICE Portal's servers as a matter of routine

---

[5] In 2016, ICE Portal's competitor, Leonardo, sued ICE Portal in arbitration over two clients who had switched their photo management services from Leonardo to ICE Portal. DSMF ¶ 67. Leonardo claimed that ICE Portal deleted Leonardo's CMI—information that Leonardo had inserted when it was managing the photos—from one of the special extended attributes fields viewable in Adobe Photoshop—not the standard copyright field. DSMF ¶ 68. An ICE Portal employee manually looked at these special, nonstandard extended attributes for some of the photos at issue in the arbitration in connection with Leonardo's claim. DSMF ¶ 69. The arbitration panel ruled in favor of ICE Portal, holding that Leonardo's consent to the use and distribution of the photos provided an implied license for "downloading, CMI removal, and image use." DSMF ¶ 70. For photos that Leonardo did not own, the arbitration panel concluded that Leonardo's lack of ownership meant it could not prevail on a DMCA claim. DSMF ¶¶ 71-72. The arbitration panel's conclusions, and in particular the conclusion that Leonardo consented to CMI removal by providing its client permission to use and distribute the Leonardo-owned photos, reinforced ICE Portal's understanding that copyright owners who provide consent to use their photos on OTAs also provide consent to processing the photos for use on the internet. DSMF ¶¶ 74-75. Because ICE Portal understood its hotel clients provided them with the rights to modify photos and make them available to OTAs, and because none of ICE Portal's hotel suppliers or OTAs (and no photographers) ever asked ICE Portal to ensure that data in extended attributes is provided to OTAs, or said that they used extended attributes for any purpose, there was no reason for ICE Portal to consider any changes to its software in response to Leonardo's claims. DSMF ¶¶ 73-75.

business practice after Starwood terminated its agreement with ICE Portal in 2017. DSMF ¶ 33.

### E.    There is no Evidence that the Use of ELIAS's At-Issue Photos by OTAs Induced, Enabled, or Facilitated Copyright Infringement.

There is no evidence that any arguable copyright infringers of ELIAS's at-issue photographs copied from an OTA website, or that the images they copied from did not contain ELIAS's CMI. Logically, nothing that ICE Portal is accused of doing could have made any difference to infringers if ELIAS cannot establish that the infringers copied photos from OTA websites, that those websites had obtained those photos from ICE Portal, and, that, when the infringers copied the photos, those particular images lacked ELIAS's CMI.

ELIAS claims that a smattering of websites are infringing the copyrights in its photos. But Victor Elias has no idea where these "infringers" copied the photos from.[6] DSMF ¶¶ 36-41. Nor does he have a clue as to whether, when the "infringer" copied his photo, it did or did not have the ELIAS CMI in the extended attributes. DSMF ¶ 37, 39, 41.

What ELIAS claims are infringements could have been authorized under the broad licenses granted by ELIAS to the hotels, thus not being infringements at all. DSMF ¶¶ 37, 49-54. Moreover, there are numerous—and much higher-quality—sources for ELIAS photos other than OTA websites. DSMF ¶ 38. Mr. Elias acknowledged that the at-issue photos were publicly available on Starwood's and Wyndham's websites, as well as on ELIAS's own website, and that it would not make sense for someone to take images from elsewhere. DSMF ¶¶ 40-41. Mr. Elias also acknowledged that anyone could go to the hotels' websites and create a screenshot of one of his images, which would not capture any information in the extended attributes. DSMF ¶ 39.

---

[6] Notably, ELIAS did not contact the alleged infringers, the OTAs, or Starwood or Wyndham to complain about "infringement." DSMF ¶¶ 45-47. The only action taken by ELIAS after discovering the alleged infringements was to assert DMCA claims against ICE Portal. DSMF ¶¶ 45-47.

Thus ELIAS's case is based on sheer speculation that the supposed "infringers" copied from OTA websites, rather than from other, more logical sources.

There also is simply no evidence that including CMI in the extended attributes of an image file would have any effect on the likelihood of potential infringement by third parties. For CMI in the extended attributes to matter at all, the potential infringer would first of all have to know that it was there. To do that, the individual would have to: (1) right click on the image; (2) download the image to the individual's computer (assuming the website allowed downloading); (3) open the image file on the computer; (4) right click on the image and select "properties"; and (5) find the field (if any) within the "properties" that relates to copyright. DSMF ¶¶ 42-44. There is no evidence that potential infringers ever go through these steps. Indeed, Mr. Elias conceded that including CMI in an image file would not necessarily deter a potential infringer. Mr. Elias testified that any of his photos that appear anywhere online—even the copies on his own website that contain visible watermarks—might be used by unscrupulous infringers who do not care about copyright ownership and who can easily remove CMI. DSMF ¶ 41.

There is no evidence that display of ELIAS's photos on OTAs without CMI embedded in the extended attributes concealed any infringements by any third parties either. Mr. Elias himself searches for and locates uses of his photos with methods that do not use the extended attributes or metadata associated with the image files. Mr. Elias testified that he finds copies of his photos online by: (1) visiting OTAs and searching for a location, e.g., "Cancun," and then looking for the hotels for which he shot photos; (2) searching on Google using keywords like the hotel name plus "Victor Elias"; (3) using the services of ImageRights, which searches the internet for a visual match to an image file without using any metadata associated with the image; (4) uploading a copy of an image to a website called TinEye which then searches the internet for a

9

visual match without using any metadata associated with the image; and (5) using Google's reverse image search function which works similarly to TinEye, DSMF ¶ 48. Given the various search methods it uses, there is no evidence that ELIAS would be unable to locate infringements if the files do not contain ELIAS's CMI in the extended attributes, or that lack of CMI in the extended attributes has ever concealed a single infringement from ELIAS, much less that ICE Portal knew that removal of such CMI from extended attributes would conceal infringement.

## II.     LEGAL STANDARD

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Owen v. I.C. System, Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011). Where the issue is the absence of proof, "Rule 56 mandates the entry of summary judgment if, after an adequate time for discovery, a party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Daniels v. Felton*, 823 Fed. Appx. 787, 789 (11th Cir. 2020) (citation omitted). Specifically, the "moving party is not required to negate the nonmovant's claim"; "the non-moving party still bears the burden of coming forward with sufficient evidence on **each element** that must be proved." *Kee v. National Reserve Life Ins. Co.*, 918 F.2d 1538, 1543 (11th Cir. 1990). Thus, the movant's burden at summary judgment is simply "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). It is then up to the non-moving party to "show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial." *United Specialty Ins. Co. v. Davis*, 2020 WL 1445484, at *3 (S.D. Fla. Feb. 19, 2020) (Smith, J.). The non-moving party "may not rely solely on the pleadings." *Id.*

### III.   ARGUMENT

ELIAS's Amended Complaint alleges a single count of violation of 17 U.S.C. § 1202(b):

(b) Removal or alteration of [CMI].—No person shall, without the authority of the copyright owner or the law—

> (1) intentionally remove or alter any [CMI] . . . , or (3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,

knowing, or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title."[7]

"CMI" includes the author's name or other identifying information about the copyright owner "conveyed in connection with copies" of a work." 17 U.S.C. § 1202(c)(2)-(3).

Section 1202(b) "contains a so-called 'double-scienter' requirement." *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020). To be liable under §1202(b)(3), "the defendant who distributed improperly attributed copyrighted material must [1] have actual knowledge that CMI 'has been removed or altered without authority of the copyright owner or the law' as well as [2] actual or constructive knowledge that such distribution 'will induce, enable, facilitate, or conceal an infringement.'" *Id.* at 171. For a claim under §1202(b)(1), the plaintiff must prove that: (1) the defendant's removal or alteration of CMI was "intentional" and without the authority of the copyright owner and that (2) the defendant had actual or constructive knowledge that such removal "will induce, enable, facilitate, or conceal an infringement." *Philpot v. WOS, Inc.*, 2019 WL 1767208, at *8 (W.D. Tex. Apr. 22, 2019); *Stevens v. Corelogic, Inc.*, 194 F. Supp. 3d 1046, 1053 (S.D. Cal. 2016), *aff'd*, 893 F.3d 648 (9th Cir. 2018).

---

[7] The Amended Complaint alludes to § 1202(a), which relates to providing false CMI. But ELIAS has not adduced any evidence that ICE Portal provided false CMI and therefore, to the extent ELIAS makes a claim under Section 1202(a), Shiji is entitled to summary judgment.

ELIAS has failed to meet its burden of proof as to these elements of its claims. First, there is *no evidence* that ICE Portal knew or had reason to know that removing ELIAS's CMI from the extended attributes or permitting OTAs to access copies of ELIAS's photos without the CMI would "induce, enable, facilitate, or conceal infringement." Second, there is no evidence that ICE Portal removed ELIAS's CMI intentionally. Third, there is no evidence in the summary judgment record that ICE Portal had any reason to believe it did not have authority from the copyright owner to remove the extended attributes, and, in fact, ELIAS granted such authority. For these reasons, summary judgment must be granted in Shiji's favor.

### A.   ICE Portal Did not Know or Have Reason to Know that Removal of CMI Would Induce, Enable, Facilitate, or Conceal Infringement.

ELIAS concedes that neither ICE Portal nor any of the OTAs committed any copyright infringement because ICE Portal was allowed to provide the images to the OTAs, and the OTAs were allowed to display them. Where the use of the work by the defendant was not infringing, the plaintiff must provide "specific evidence" that future infringement by a third party is "likely, albeit not certain, to occur as a result of the removal or alteration of CMI." *Stevens v. Corelogic*, 899 F.3d 666, 675 (9th Cir. 2018). ELIAS does not have any such evidence. Instead, to try and prove that ICE Portal knew or had reason to know that distribution of the images without ELIAS's CMI "will induce, enable, facilitate, or conceal an infringement," ELIAS relies on a long string of assumptions that are not backed up by evidence. ELIAS assumes, without any support, that: (1) an individual who wanted to use one of ELIAS's images did not have authorization to use the photo; (2) that individual would have gone to an OTA and copied the lower resolution images there, rather than copying from the hotel's website or even from Mr. Elias's website; (3) before copying and displaying the image, the individual would have downloaded the image file, opened the file, right-clicked on the file, and viewed the "properties"

to check whether there was any CMI in the extended attributes; and (4) if the person noticed CMI in the extended attributes, they would not have copied the photo. Each of these assumptions is speculative and without supporting evidence.

The Court need not go beyond *Stevens v. CoreLogic* to resolve this case because it makes clear that, on the discovery record here, no reasonable jury could conclude that ICE Portal had any reason to know that not maintaining CMI in the extended attributes would "induce, enable, facilitate, or conceal" infringement. *Stevens* addressed a nearly identical factual situation. The plaintiff was a putative class representative purporting to represent real estate photographers whose photographs were used to market for-sale houses through a multiple listing service (called an MLS). *Id.* at 670. The photographers licensed the photos to real estate agents, who uploaded them to the MLS. *Id.* Because the image files could be "very large," CoreLogic's software for the MLS "downsample[d]" the image files by "creating and saving a copy of an uploaded image in a smaller number of pixels" in order to "reduce[] storage size, facilitate[] computer display, and help[] images load faster on web pages." *Id.* at 671. The photographers asserted a DMCA claim against CoreLogic on the basis that CMI embedded in the metadata of the image files was not retained in the software's downsampling process. *Id.* at 671-72.

The Ninth Circuit held that the photographers had failed to present evidence that CoreLogic had reason to know that removal of CMI would induce, enable, facilitate, or conceal infringement. Because no infringement occurred in the use of the photos by CoreLogic or the MLS, the photographers argued that, without the CMI, some third party might be able to use their photos undetected. *Id.* at 673. In a case based upon **third party** infringement, the Ninth Circuit held, the plaintiff "must make an affirmative showing, such as by demonstrating a past 'pattern of conduct' or 'modus operandi', that the defendant was aware or had reasonable

grounds to be aware of the probable future impact of its actions." *Id.* Specifically, a plaintiff "must provide evidence from which one can infer that future infringement is likely, albeit not certain, to occur *as a result of* the removal or alteration of CMI." *Id.* at 675.

The photographers failed to produce evidence that CMI metadata was "of any practical significance to the Photographers in policing copyright infringement of their images" or that removal of CMI induced, enabled, facilitated, or concealed "any particular act of infringement by anyone, let alone a pattern of such infringement likely to recur in the future." *Id.* The photographers identified "***no*** instance in which removal of CMI metadata from any photograph" in fact aided infringement, particularly since "a party intent on using a copyrighted photograph undetected can itself remove any CMI metadata, precluding detection through a search for the metadata." *Id.* at 676. Accordingly, the court held that "[b]ecause the Photographers ha[d] not put forward *any* evidence that CoreLogic knew its software carried even a substantial risk of inducing, enabling, facilitating, or concealing infringement, let alone a pattern or probability of such a connection to infringement," CoreLogic was entitled to summary judgment. *Id.* at 676.

ELIAS's lack of evidence here mirrors *Stevens* because there is no evidence of a "pattern of conduct" of which ICE Portal was aware at the time it made ELIAS's photos available to OTAs of third party infringers taking images *from OTA websites*, without permission, *because* the images did not have the photographers' CMI in the extended attributes. First, there is no evidence that any of the photos that were allegedly used by infringers were in fact copied from OTA websites, much less that those OTAs obtained their copies of ELIAS' photos from ICE Portal. DSMF ¶¶ 34-41. ***Mr. Elias admitted that he does not know where any of the alleged infringers obtained copies of the photos, and that the images were available on ELIAS's own websites, as well as on the websites of Starwood and Wyndham.*** DSMF ¶¶ 34-41.

14

Second, the idea that including CMI in the extended attributes would make infringement by a third party less likely to occur and that removing CMI from the extended attributes would make third party infringement more likely to occur is simply implausible. This theory depends on evidence that would-be infringers know that CMI can appear in extended attributes and care enough that they would go through the trouble of checking the extended attributes and would decide not to use the photos if the extended attributes contain CMI. That chain of logic has no evidentiary support, and it defies common sense. Mr. Elias himself admitted that any of his photos that appear *anywhere* online—even the copies on his own website that contain *visible* watermarks—might be taken by unscrupulous infringers who do not care about CMI and have the capability to remove it. DSMF ¶ 41. The fact that "a party intent on using a copyrighted photograph undetected can itself remove any CMI metadata" is one of the reasons the Ninth Circuit held that a claim like ELIAS's must fail. *Stevens*, 899 F.3d at 676.

Third, to identify a pattern of infringement, the plaintiff would have to show a pattern of *unauthorized* use *in the United States*, because use of a work is only an infringement if it violates one of the exclusive rights set forth in Section 106 of the Copyright Act. *See Teleprompter Corp. v. Columbia Broadcasting Sys., Inc.*, 415 U.S. 394, 398 (1974). ELIAS's licenses granted the hotels broad rights to use the photos online, DSMF ¶¶ 49-54, and Mr. ELIAS testified that he did not know how any of the "infringing" websites obtained copies of his photos, DSMF ¶ 37. Accordingly, ELIAS has not met its burden of proving that any of the identified uses were unauthorized and thus has failed to prove any infringement at all.

In addition, there is no evidence here that CMI in the extended attributes is "of any practical significance" to ELIAS in policing copyright infringement. Mr. Elias looks for uses of his photos online by going straight to the OTAs to search for locations he shot, by Googling the

names of hotels he shot, and by using reverse image search software that scans the internet for visual matches to his images without making use of any metadata or extended attributes. DSMF ¶ 48. There is no evidence that ELIAS would be unable to detect an infringement online by one of these methods if the image lacked CMI in the extended attributes.

Finally, even if ELIAS could substantiate that infringement was aided by the absence of its CMI, or that ELIAS cannot identify infringements if the extended attributes are removed, there is no evidence at all that ICE Portal had "reason to know" about any of it.

This case is on all fours with *Stevens*, and there is no evidence in the record that ICE Portal had reason to know that the alleged removal of CMI in the extended attributes of ELIAS's photos would induce, enable, facilitate or conceal infringement. On this ground alone, the Court should grant summary judgment in ICE Portal's favor.

**B.    There is no Evidence From Which a Reasonable Jury Could Conclude That ICE Portal Intended to Remove CMI.**

ELIAS also lacks proof of the other half of Section 1202(b)'s double scienter requirement. In order to survive summary judgment, ELIAS would have to show that ICE Portal "intentionally" removed ELIAS's CMI and that ICE Portal distributed ELIAS's photos with "actual knowledge" that ELIAS's CMI had been removed. There is simply no evidence of either.

Intentionality "requires proof of intent or actual (not constructive) knowledge: intentional removal or distribution with knowledge of removal." *Philpot*, 2019 WL 1767208, at *8. Courts have granted summary judgment in cases where even if CMI was removed, the defendant was not aware whether the work in question contained CMI in the first place. In *Philpot*, for example, summary judgment was granted because the defendant "did not know that the photos contained metadata when it pulled the files off Wikimedia or when it posted" the images on its website. *Id.* at *8. Specifically, although the defendant "scrubbed" metadata as a matter of practice because it

made the file sizes smaller, it "d[id] not think about what metadata might contain because it d[id] not consider metadata to be useful." *Id.* Likewise, in *Fey v. Panacea Management Grp. LLC*, 261 F. Supp. 3d 1297, 1313 (N.D. Ga. 2017), the defendant was accused of removing the plaintiff's name from a drawing. The court granted summary judgment because the defendant "did not see Plaintiff's name on the Drawing" before allegedly removing it. *Id.*

The facts here are clear and undisputed: Between 2013 and 2018, ICE Portal's system was not programmed to detect, collect, flag, or analyze any extended attributes that may or may not have been in the image files loaded into its system. DSMF ¶¶ 23, 77. Indeed, before this year, no hotel supplier or OTA ever asked for extended attributes to be preserved in any way. DSMF ¶¶ 24-28. And until this case, no photographer has ever claimed to ICE Portal that he or she embeds their CMI in the extended attributes to prevent infringement or find infringement. DSMF ¶¶ 29-30. ICE Portal's automated software therefore would not have alerted anyone as to the existence of any CMI contained in the extended attributes of a file and, with about 1.5 million images in its system, ICE Portal's employees would have no reason to and would not be able to check manually for extended attributes. DSMF ¶¶ 10, 23-30, 77. Accordingly ELIAS cannot show that any supposed removal of CMI was intentional, as opposed to an "unintended side effect" of ICE Portal's software.[8] *Stevens*, 194 F. Supp. 3d at 1052; *Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116, 1122 (C.D. Cal. 1999). Shiji is entitled to summary judgment on this basis.

---

[8] In a deposition in the Leonardo arbitration ICE Portal's Henry Woodman testified "[w]e look for CMI now where we didn't before." That was because Leonardo had falsely claimed copyright ownership, and inserted its name in a Photoshop field. ICE Portal won the arbitration, and did not change its software to "look for" extended attributes thereafter. Knowledge that a competitor had falsely claimed to own photos did not impose a duty on ICE Portal to change its software system designed to meet its ordinary-course business needs especially in light of the fact the arbitration panel concluded that Leonardo consented to CMI removal by permitting the photos to be distributed and that no photographer—including Mr. Elias—had ever said that they prevented or detected infringement using such esoteric methods.

Finally, ICE Portal is at least entitled to partial summary judgment because, with the exception of three of the Wyndham photos, there is no evidence in the summary judgment record that ICE Portal ever received the photos with ELIAS's CMI in the extended attributes, and therefore, there is no evidence that ICE Portal "removed" any such CMI. Because all of the Starwood image files were removed from ICE Portal's system when Starwood terminated its agreement with ICE Portal in 2017, there is no evidence in the summary judgment record that the photos as obtained by ICE Portal from Starwood contained ELIAS's CMI.[9] DSMF ¶¶ 31-33. Accordingly, Shiji is at least entitled to summary judgment with respect to all the Starwood photos, all of the Marriott CasaMagna photos, which ICE Portal never had in its system, and the seven Wyndham photos that ICE Portal's investigation showed did not have CMI in the extended attributes when they were received by ICE Portal. DSMF ¶¶ 13, 31-33

### C. There is no Genuine Issue of Fact as to Whether ICE Portal Removed CMI "Without the Authority of the Copyright Owner."

ICE Portal did not have any reason to believe it did not have authority from the copyright owner to make copies of the photos available to OTAs without CMI in the extended attributes. Under Section 1202(b)(1) and (3), a violation can only occur where the defendant removed CMI or distributed a work without CMI knowing, in either case, that the defendant was not authorized by the copyright owner to do so. Accordingly, the plaintiff bears the burden of showing that the

---

[9] ELIAS will presumably ask the Court to infer that, because it was possible that the extended attributes may have contained CMI when ELIAS provided images to the Starwood hotels, ICE Portal must have received them with CMI. But district courts have refused to draw such a conclusion on summary judgment. *See Photographic Illustrators Corp. v. Orgill, Inc.*, 118 F. Supp. 3d 398, 407-08 (D. Mass. 2015) ("Given the existence of a third party that has not been deposed and is otherwise absent from the case, it would be too speculative to infer that [defendant] removed CMI simply because [the third party] received images containing copyright information."); *Stevens*, 194 F. Supp. 3d at 1052 (lack of evidence that images contained CMI when third party uploaded them to defendant's system was "fatal to Plaintiffs' argument").

defendant ***knew it was was not permitted*** to remove CMI or distribute the work without CMI. *Stevens*, 194 F. Supp. 3d at 1053 & n.5. ELIAS cannot make that showing.

ELIAS must show that ICE Portal had "***actual knowledge*** of the ***unauthorized*** change to the copyright management information" in the extended attributes of ELIAS's photos. *Gordon v. Nextel Communications*, 345 F.3d 922, 926 (6th Cir. 2003). If ICE Portal *believed* it was authorized to remove the extended attributes, it cannot be liable under Section 1202(b), even if that belief turned out to be incorrect. In *Gordon*, for example, the defendant testified that, when it obtained the at-issue poster, from which CMI had allegedly been removed, it "believed that the poster had been cleared for use in television commercials"—which was the use the defendant made of it. *Id.* at 926-27. Even though it turned out it had not been so cleared, the Sixth Circuit affirmed the district court's conclusion that there was "no proof that the defendants . . . utilized the version of the illustrations knowing that the copyright management information had been removed or altered without authority of the copyright owner." *Id.*

The evidence is even stronger here that ICE Portal reasonably believed that it had the right to alter the photos in any way. ICE Portal's MSAs with both Starwood and Wyndham were clear that the client warranted that it had the right to permit ICE Portal to "use, copy, store, modify, (including standardize, optimize, crop or otherwise reformat for distribution), distribute, broadcast, perform and display (publicly or otherwise) . . . any [images] provided by the [client] to ICE Portal." DSMF ¶¶ 62-65. And ICE Portal's President and Chief Technology Officer both testified clearly that they believed that Starwood and Wyndham had the rights to the photos and that ICE Portal had the rights to process and modify them for display on OTAs. DSMF ¶ 66.

Because ICE Portal believed it had all the rights necessary to modify the photos in any way whatsoever, it does not matter whether or not ELIAS actually provided such authorization to

the hotels. But, in any event, ELIAS authorized removal of extended attributes by implied license. In this circuit, "[a]n implied nonexclusive license is created when one party creates a work at another party's request and hands it over, intending that the other party copy and distribute it." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 956 (11th Cir. 2009). The district court in *Stevens v. Corelogic* found an implied license to remove metadata under similar circumstances to those at issue here, where photographers licensed their photos to real estate agents for the purpose of using them online to promote properties for sale: "Plaintiffs licensed their photographs to real estate agents for the express purpose of uploading the photographs onto an MLS. . . . Nowhere in the agreements with the agents do Plaintiffs warn the agents not to remove embedded metadata not viewable with the naked eye. . . . . Plaintiffs impliedly gave authority to the agents to upload these photographs even though the result was the removal of CMI." *Stevens*, 194 F. Supp. 3d at 1054. A virtually identical, and equally undisputed, factual situation exists here. ELIAS granted broad licenses to Starwood and Wyndham hotels for payment, knowing that they would be used by OTAs and processed by a company like ICE Portal. DSMF ¶¶ 6-7, 49-56. The licenses make no reference to CMI, or to metadata or extended attributes more generally, much less prohibit their removal. DSMF ¶ 54. Accordingly, ICE Portal was impliedly licensed to remove CMI from the extended attributes of the at-issue photos.

## IV.    CONCLUSION

For all of the reasons discussed above, Shiji respectfully requests that the Court grant summary judgment in its favor.

Dated:  October 30, 2020                    DUANE MORRIS LLP


                                            */s/ Karen Chuang Kline*
                                            Karen Chuang Kline
                                            kckline@duanemorris.com
                                            1875 NW Corporate Boulevard
                                            Suite 300
                                            Boca Raton, FL 33431-8561
                                            Tel:    561-962-2100
                                            Fax:    561-962-2101

                                            *and*

                                            David J. Wolfsohn (PA Bar No. 57974)
                                            djwolfsohn@duanemorris.com
                                            *(admitted pro hac vice)*
                                            Kendra C. Oxholm (PA Bar No. 325621)
                                            *(admitted pro hac vice)*
                                            Tyler R. Marandola (PA Bar No. 313585)
                                            *(admitted pro hac vice)*
                                            30 S. 17th Street
                                            Philadelphia, PA 19103
                                            Tel:    215-979-1000
                                            Fax:    215-689-2739

                                            *Attorneys for*
                                            *Shiji (US) Inc.*

**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

VICTOR ELIAS PHOTOGRAPHY, LLC,

        Plaintiff,

   v.

ICE PORTAL, INC. and SHIJI (US), INC.,

        Defendant.

C.A. NO. 0:19-cv-62173-RS

**[PROPOSED] ORDER**

    AND NOW this _____ day of _____, 2020, it is

hereby ORDERED that Defendant's Motion for Summary Judgment is GRANTED, and

judgment is ENTERED in favor of Defendant as to Count I of the First Amended Complaint.

_____

UNITED STATES DISTRICT JUDGE

## <u>CERTIFICATE OF SERVICE</u>

I, Karen Chuang Kline, hereby certify that, on this 30th day of October 2020, I caused a

true and correct copy of the foregoing Motion for Summary Judgment and Incorporated

Memorandum of Law to be served upon all counsel of record by CM/ECF:

<i>/s/ Karen Chuang Kline</i><br>Karen Chuang Kline