UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| VICTOR ELIAS PHOTOGRAPHY, LLC, <br><br> Plaintiff, <br><br> v. <br><br> ICE PORTAL, INC. and SHIJI (US), INC., <br><br> Defendant. | C.A. NO. 0:19-cv-62173-RS |

**DEFENDANT SHIJI (US), INC.'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

Karen Chuang Kline (FL Bar No. 59998)
kckline@duanemorris.com
DUANE MORRIS LLP
1875 NW Corporate Boulevard
Suite 300
Boca Raton, FL 33431-8561
Tel:    561-962-2100
Fax:    561-962-2101

*and*

David J. Wolfsohn (PA Bar No. 57974)
djwolfsohn@duanemorris.com
*(admitted pro hac vice)*
Kendra C. Oxholm (PA Bar No. 325621)
*(admitted pro hac vice)*
kcoxholm@duanemorris.com
Tyler R. Marandola (PA Bar No. 313585)
*(admitted pro hac vice)*
tmarandola@duanemorris.com
DUANE MORRIS LLP
30 S. 17th Street
Philadelphia, PA 19103
Tel:    215-979-1000
Fax:    215-689-2739

*Attorneys for Shiji (US) Inc.*

# TABLE OF CONTENTS

Page

A. There is no Evidence that ICE Portal Provided False CMI. ............................................... 2

B. There is no Evidence that ICE Portal Intentionally Removed CMI. ................................. 2

C. There is no Evidence that ICE Portal had Reason to Believe Its Conduct Would Induce, Enable, Facilitate, or Conceal Infringement. ........................................................... 4

D. ICE Portal had an Implied License to Optimize Photos for Display on OTAs. ................. 8

# **TABLE OF AUTHORITIES**

**Cases**

*Dawes-Ordonez v. Realtor Ass'n of Greater Fort Lauderdale, Inc.*,
   No. 09-60335-CIV, 2010 WL 1791754 (S.D. Fla. May 5, 2010)............................................10

*Faulkner Press, L.L.C. v. Class Notes, L.L.C.*,
   756 F. Supp. 2d 1352 (N.D. Fla. 2010).................................................................................3, 5

*Fey v. Panacea Mgmt. Grp.*,
   261 F. Supp. 3d 1297 (N.D. Ga. 2017)..................................................................................3, 4

*Friedman v. Live Nation Merch.*,
   833 F.3d 1180 (9th Cir. 2016) ....................................................................................................5

*Frost-Tsuji Architects v. Highway Inn, Inc.*,
   No. 13-00496 SOM/BMK, 2014 WL 5798282 (D. Haw. Nov. 7, 2014) ..................................7

*Gordon v. Nextel Commnc's*,
   345 F.3d 922 (6th Cir. 2003) ..................................................................................................3, 8

*Jedson Engineering v. Spirit Construction Services*,
   720 F. Supp. 2d 904 (S.D. Ohio 2010) ..................................................................................6, 7

*Josendis v. Wall to Wall Residence Repairs*,
   662 F.3d 1292 (11th Cir. 2011) ..................................................................................................6

*Kelly v. Arriba Soft Corp.*,
   77 F. Supp. 2d 1116 (C.D. Cal. 1999) ..............................................................................3, 4, 5

*Keogh v. Big Lots Corp.*,
   No. 3:04-00738, 2006 WL 1129375 (M.D. Tenn. Apr. 27, 2006) ............................................3

*Mango v. BuzzFeed, Inc.*,
   970 F.3d 167 (2d Cir. 2020)......................................................................................1, 6, 7, 8

*Nucap Indus., Inc. v. Robert Bosch LLC*,
   No. 15-02207, 2019 WL 4242499 (N.D. Ill. Sept. 7, 2019)......................................................7

*Odom v. Navarro*,
   No. 09-21480-CIV-UNGARO, 2010 WL 11505459 (S.D. Fla. Mar. 11, 2010)......................5

*Philpot v. WOS, Inc.*,
   No. 1:18-CV-339-RP, 2019 WL 1767208 (W.D. Tex. Apr. 22, 2019) .................................3,4

*Powers v. Caroline's Treasures Inc.*,
   382 F. Supp. 3d 898 (D. Ariz. 2019) .........................................................................................7

*Propet USA, Inc. v. Shugart*,
  No. C06-0186-MAT, 2007 WL 4376201 (W.D. Wash. Dec. 13, 2007) .................................4

*R. Miller Architecture, Inc. v. Edgington Enterp., Inc.*,
  No. 6:06-cv-871, 2006 WL 2226297 (M.D. Fla. Aug. 3, 2006) ...............................................10

*Rubenstein v. Florida Bar*,
  72 F. Supp. 3d 1298 (S.D. Fla. 2014) ......................................................................................4

*Stevens v. Corelogic, Inc.*,
  194 F. Supp. 3d 1046 (S.D. Cal. 2016) ...............................................................................8, 10

*Stevens v. Corelogic, Inc.*,
  899 F.3d 666 (9th Cir. 2018) ......................................................................................1, 5, 6, 7

*UMG Recordings, Inc. v. Disco Azteca Distributors, Inc.*
  446 F. Supp. 2d 1164 (E.D. Cal. 2006) ....................................................................................9

**Statutes**

17 U.S.C. § 1202................................................................................................................*Passim*

ELIAS concedes that the Ninth Circuit and the Second Circuit have correctly interpreted Section 1202(b) as containing a double scienter requirement. A plaintiff must prove (1) "actual knowledge that CMI 'has been removed or altered without authority of the copyright owner or the law' as well as [2] actual or constructive knowledge that such distribution 'will induce, enable, facilitate, or conceal an infringement.'" *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020); *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 673-74 (9th Cir. 2018). This is a high bar in a case like this one, where the defendant did not infringe any copyright, because, by definition, the defendant acted within the scope of its license and believed it had the right to use the works at issue. Here, just as in *Stevens*, ELIAS has no evidence supporting either scienter requirement.

First, it is undisputed that Shiji (formerly known as ICE Portal) ***did not know*** that there was any CMI in any of the at-issue photos because Shiji's software was not programmed to ***find*** such CMI. That lack of knowledge is fatal to ELIAS's claim and, on that ground alone, summary judgment should be granted. Second, there is simply no evidence that any third party infringed ELIAS's photos by copying them from the OTA websites. More importantly, there is no evidence that Shiji ***knew*** at the time it processed the photos for OTAs that infringement would likely occur if CMI was not buried in the metadata. In fact, there is no evidence that infringers ever look for CMI on OTAs, or that CMI deters them from infringing. Truth be told, there are better sources for copying ELIAS's photos—including on ELIAS's and the hotels' websites— and infringers do not look for or care about finding CMI hidden in the metadata.

As for "concealment," ELIAS concedes that Shiji had the right to copy the photos and make them available to OTAs, so there is no evidence that it was trying to conceal anything. And even if Shiji had known that there was CMI in any of the photos, there is no evidence that the absence of CMI would make it harder to find infringements or, even if there was, that Shiji

should have known that. If that were true, ELIAS would not have been able to find the supposed infringements itself. In fact, Mr. Elias admitted at his deposition that he does not discover infringements by searching for CMI in the extended attributes, and there is no evidence that anyone else does. The record is entirely devoid of any evidence that would support a jury's conclusion that Shiji somehow should have known that if the OTAs displayed ELIAS's photos without hidden CMI in the extended attributes that would "conceal" any infringement.

### A. There is no Evidence that ICE Portal Provided False CMI.

Shiji's motion argues that ELIAS has presented no evidence to support any claim that ICE had ***knowingly provided*** CMI that is false under 17 U.S.C. § 1202(a). ECF No. 39 at 11 n.7. ELIAS's only response is to point to screenshots that show some photos with text reading "Photo Credit: Tingo" or "Credit: Tingo," and one Wyndham photo with "Provided by ICE Portal." ECF No. 50 ¶¶ 106-107; ECF Nos. 50-10, 50-28. But ELIAS has no evidence to meet its burden of proving that ***ICE*** "provided" this credit line to the OTAs. The unchallenged testimony is that it was ***not provided by ICE***, but rather by the OTA where the photo was displayed. ECF No. 40-3, McMahon Dep. at 198:4-8 ("[T]he attribution doesn't come from us . . . ."). ICE Portal is thus entitled to summary judgment on ELIAS's false CMI claim.[1]

### B. There is no Evidence that ICE Portal Intentionally Removed CMI.

Under 17 U.S.C. § 1202(b)(3), ELIAS must show that ICE Portal distributed copies of ELIAS's photos ***"knowing*** that the copyright management information has been removed." A plaintiff must prove ***actual knowledge*** (not constructive—not based on speculation) that: (1) CMI existed in the work (2) that was removed without the authority of the copyright owner

---

[1] ICE is also entitled to summary judgment because the complained-of attributions do not claim authorship or ownership and therefore do not fall within the statutory definition of CMI. 17 U.S.C. § 1202(c). Def.'s Reply to Pl.'s Statement of Additional Facts ¶¶ 106, 107.

2

before the defendant's distribution.² *Mango*, 970 F.3d at 171; *Gordon v. Nextel Commnc's*, 345 F.3d 922, 926 (6th Cir. 2003); *Philpot v. WOS, Inc.*, 2019 WL 1767208, at *8 (W.D. Tex. Apr. 22, 2019); *Fey v. Panacea Mgmt. Grp.*, 261 F. Supp. 3d 1297, 1313 (N.D. Ga. 2017); *Keogh v. Big Lots Corp.*, 2006 WL 1129375, at *2 (M.D. Tenn. Apr. 27, 2006). There is no evidence that ICE ***knew*** ELIAS's CMI was in the photos at-issue—192 out of the 1.5 million that it manages.

It is undisputed that, when the photos were being processed, neither ICE Portal's system nor its employees ever viewed the extended attributes in ELIAS's photo files, as explained by ICE Portal's Chief Technology Officer, Joe McMahon:

> Q: Prior to [2020], you did not have [software] code that would show you what information is contained in the extended attribute; is that correct?
>
> A: Correct. There was no business requirement from the suppliers to do, you know, to look at the extended attributes for any reason.

ECF No. 40-3, McMahon Dep. at 62:4-9; *see also* ECF No. 40 ¶¶ 23-30. ELIAS does not challenge McMahon's testimony. Instead, it argues that, after ICE Portal won a baseless DMCA claim in 2016 brought by a competitor, it should have ***changed*** its system to look for CMI in the millions of images it processes.³ Opp. at 17-18. Not surprisingly, ELIAS cites no case creating a

---

² Section 1202(b)(1), which pertains to claims that a defendant has "intentionally remove[d] or alter[ed]" CMI, is inapplicable here. Such a claim "requires the information to be removed from a plaintiff's ***product or original work***." *Faulkner Press, L.L.C. v. Class Notes, L.L.C.*, 756 F. Supp. 2d 1352, 1359 (N.D. Fla. 2010) (emphasis added); *Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116, 1122 (C.D. Cal. 1999), *rev'd in part on other grounds*, 336 F.3d 811 (9th Cir. 2003). ELIAS concedes that ICE's system downloads the original photos "as they exist in the format maintained by the hoteliers," contending that the system makes "unauthorized copies" allegedly not containing ELIAS's CMI. Opp. at 4; ECF No. 50 ¶¶ 96-97. ELIAS does not claim that ICE Portal removed CMI from the original files it received, nor could it. But even if §1202(b)(1) did apply, such a claim fails because ICE did not "intentionally" remove any CMI.

³ ELIAS's repeated invocation of Henry Woodman's 2016 testimony from the Leonardo arbitration that "[w]e look for CMI now where we didn't before" is not evidence that ***after*** the arbitration, ICE Portal found and was aware of CMI in any ELIAS photos. First, Mr. Woodman explained that what he was referring to was that, in connection with the arbitration, ICE looked for information in special extended attributes in a particular set of photos received from

'duty to look' for CMI. To the contrary, courts have repeatedly granted summary judgment where the record showed that the defendant was unaware of the CMI, even if the defendant *could have* found it. *See, e.g.*, *Philpot*, 2019 WL 1767208, at *8 (granting summary judgment where defendant did not know plaintiff's photos contained CMI, even though it was possible to discover it); *Fey*, 261 F. Supp. 3d at 1313 ("[e]ven if there was [CMI], [defendant's employee] did not see [it]," and therefore "even if removal had occurred, it was not intentional"). Because the unchallenged testimony shows that ICE Portal did not know whether any of the images contained ELIAS's CMI, ICE Portal is entitled to summary judgment.[4]

### C. There is no Evidence that ICE Portal had Reason to Believe Its Conduct Would Induce, Enable, Facilitate, or Conceal Infringement.

There is no evidence that ICE had any reason to know that, by making ELIAS's photos

---

Leonardo. ECF No. 40-2 at 28:9-31:24. Second, it is undisputed that ICE did not change its software to find CMI in the 1.5 million photos in its database, as Mr. McMahon testified in this case and in the Leonardo arbitration, ECF No. 50-27 at 71:1-72:19; ECF No. 40-3 at 180:20-182:1. ELIAS not only does not dispute this, it *relies* on the fact that ICE Portal had the "wherewithal to specifically look" for CMI, but "refused to change their business practices" of not looking for metadata. Opp. at 17. Thus, ELIAS does not dispute that, both before and after the Leonardo arbitration, ICE's software did not look for CMI in metadata, and that it did not look for and never found any CMI in any of ELIAS's photo files. Regardless of what Mr. Woodman was "looking for" during the Leonardo case, there is no evidence that ICE ever knew it had any of ELIAS's photos, in particular, or that it ever *found* any CMI in any of them. ELIAS cannot "manufacture a genuine issue of fact by misconstruing or misstating the clear factual record before the Court." *Rubenstein v. Florida Bar*, 72 F. Supp. 3d 1298, 1307 (S.D. Fla. 2014).

[4] In *Propet USA, Inc. v. Shugart*, 2007 WL 4376201 (W.D. Wash. Dec. 13, 2007), Propet did not present evidence that it never knew CMI existed in the metadata of Shugart's images, as ICE does here. Rather, the evidence was that Shugart delivered his images *directly* to Propet and that Propet had "actual knowledge of Shugart's copyright ownership," and the key witness who would have known if Propet had intentionally removed CMI did not testify. *Id.* at *2, 4. Here, in contrast, there is no genuine dispute that ICE did not know whether ELIAS's photos contained CMI because neither its software nor its employees checked whether the 1.5 million photos in its database have CMI in the metadata. Moreover, in *Propet*, there was no evidence that removal of CMI was an unintended side effect, *id.* at *5, whereas ELIAS admits that ICE Portal's software, which processed and resized the photos for use on OTAs, removed the extended attributes as a side effect. ELIAS fails to cite or distinguish cases holding that removal under such circumstances is unintentional as a matter of law. *See, e.g.*, *Kelly*, 77 F. Supp. 2d at 1122.

4

available to OTAs without CMI in the extended attributes, it would induce, enable, facilitate, or conceal infringement of ELIAS's photos.[5] It is not enough for ELIAS to point to a metaphysical risk inherent in posting photos online that a someone downstream might someday infringe. *Stevens*, 899 F.3d at 673; *Kelly*, 77 F. Supp. 2d at 1122. ELIAS needs to present evidence of a link between ICE's conduct and the third-party infringement, *and* there must be a reason that ICE should have known the infringement was likely. *Stevens*, 899 F.3d at 674-75. Otherwise, a DMCA claim could be made anytime someone was authorized to put content online.

To show a link between ICE's alleged conduct and third party infringement, there would have to be evidence that: (1) a potential infringer would want to copy the low-quality photos on OTAs rather than from the other, higher-quality sources; (2) before deciding to use one of ELIAS's photos, the person would check to see whether there was any CMI hidden in the extended attributes; and (3) if CMI was present, the person would then decide against copying the photo. There is no evidence that any of this has ever occurred. ELIAS admits that it does not know where any of the alleged "infringers" copied from. ECF No. 50 ¶ 37. That admission is fatal to its claim.[6] Even if ELIAS could prove that any of the screenshots Mr. Elias captured were actionable infringements, they would only be relevant if the "infringers" took ELIAS's photos ***from OTAs*** to which ICE had distributed, and that they did so ***because*** there was no CMI

---

[5] It is not true that only the jury can decide intent. Summary judgment is regularly granted on § 1202 claims where the plaintiff fails to prove one of the scienter requirements. *Faulkner Press*, 756 F. Supp. 2d at 1360; *Odom v. Navarro*, 2010 WL 11505459, at *7 (S.D. Fla. Mar. 11, 2010).

[6] Citing *Friedman v. Live Nation Merch.*, ELIAS argues that it should not have to produce evidence of where "infringers" copied from. But *Friedman* addressed a completely different issue: defendant's failure to rebut plaintiff's evidence that the copies of photos defendant obtained had plaintiff's CMI. 833 F.3d 1180, 1189 (9th Cir. 2016). By contrast, here the issue is whether infringers obtained photos from a source linked to ICE. And ELIAS hasn't pointed to any evidence suggesting the infringers obtained the photos from OTAs, and ICE ***has*** pointed to evidence that the infringers would have obtained them from elsewhere—ELIAS's or the hotels' websites. ECF No. 40 ¶¶ 37-41.

in the metadata. *Stevens*, 899 F.3d at 675. ELIAS's repeated suggestion that the infringers must have copied from OTAs because the "infringing" copies do not contain CMI in the metadata is speculative and not enough to meet ELIAS's burden of proof. *Josendis v. Wall to Wall Residence Repairs*, 662 F.3d 1292, 1318 (11th Cir. 2011) (on summary judgment, "evidence, consisting of one speculative inference heaped upon another, [is] entirely insufficient"); *see also* ECF No. 40 ¶ 37. The photos were freely available on other websites, ECF No. 40 ¶ 38, and Elias admitted that anyone could have taken a screenshot from the hotels' websites that would not capture the CMI from the metadata, *id.* ¶ 39. Moreover, Mr. Elias testified that unscrupulous infringers are not deterred by the presence of CMI and remove CMI themselves. ECF No. 40-1, Elias Tr. at 10:19-12:21. Thus, the fact that a photo lacks CMI says nothing about where that photo came from.

      Even if ELIAS had shown that "infringers" copied the photos from the OTAs, it has still failed to prove that ICE Portal had any reason to know that infringements were likely to occur. ELIAS argues that ICE Portal should have been aware that infringement was likely because it was generally aware of the DMCA and copyright law. But the Leonardo arbitration did not make ICE Portal "cognizant of the consequences of removing CMI from embedded metadata," Opp. at 10, because Leonardo never proved a connection between removal and infringement. ECF No. 40-53 at 12 ("Leonardo has not shown . . . that any allegedly improper actions regarding CMI would result in an infringement of a copyright."). And the fact that ICE Portal was aware that it needed permission to use and alter photos does not help ELIAS because ICE Portal received that permission from Starwood and Wyndham, showing a complete *lack* of scienter.[7]

---

[7] *Mango* and *Jedson Engineering v. Spirit Construction Services* do not suggest otherwise. In *Mango*, the Second Circuit did not "decline to follow" *Stevens*, instead finding that *Stevens* "is not in tension with our decision here." 970 F.3d at 174. The Second Circuit held that *Stevens* applies where, like here, the defendant did not infringe, whereas in *Mango*, the requisite intent could be inferred because the defendant knew it needed permission to use the photo and should

6

There is no evidence that would support a jury conclusion that ICE Portal had reason to believe that its conduct was likely to facilitate any infringement of ELIAS's photos. It is undisputed that, before ELIAS initiated this litigation, no photographer, copyright owner, OTA, or hotel chain had ever mentioned extended attributes to ICE Portal, let alone asked ICE Portal to preserve CMI in the extended attributes to prevent infringement. ECF No. 40 ¶¶ 26-29.[8] It is also undisputed that ICE Portal had the right to make the photos available to OTAs, *id.* ¶ 6; ECF No. 50 ¶ 80, and that its purpose in making downsized copies was to optimize them "for faster display by OTAs on the internet to their consumers"—not to facilitate or conceal downstream infringement, ECF No. 40 ¶ 17. And there is no genuine dispute regarding ICE Portal's belief that it had authority to modify the photos as needed—even if extended attributes were removed as a side effect. *Id.* ¶ 66. On these facts, no reasonable jury could find that ICE Portal had the intent to induce, enable, facilitate, or conceal infringement.[9]

---

have known that adding false CMI concealed the *defendant's own infringement*. *Id.* at 173-74. Similarly, in *Jedson*, the *defendant's own use of the work was infringing*, so the jury could infer intent because the defendant was being hired to copy the plaintiff's work and asked for indemnification because he was concerned that the plaintiff had not given permission. 720 F. Supp. 2d 904, 931 (S.D. Ohio 2010); Jedson's MSJ at 75-78, Jedson Eng'g v. Spirit Constr. Servs., No. 08-cv-413, Dkt. No. 112 (S.D. Ohio Apr. 26, 2010). Those cases have no bearing here, where there is no dispute that ICE Portal's use was not infringing. ECF No. 40 ¶ 6; ECF No. 50 ¶ 80. The provisions in the MSAs were appropriately aimed at ensuring ICE would have the rights it needed to use and modify the photos and not related to any specific concern that use of ELIAS's photos, in particular, might be infringing, as there was in *Mango* and *Jedson*.

[8] ELIAS's only dispute as to ¶¶ 26-28 is that ICE began extracting some information from extended attributes, but that occurred in 2020 and Radisson did not ask for any extended attributes to be preserved in copies of photos made available to OTAs. ECF No. 40 ¶¶ 76-78.

[9] *See Stevens*, 899 F.3d at 671-76. *See also, e.g.*, *Nucap Indus., Inc. v. Robert Bosch LLC*, 2019 WL 4242499, at *12-13 (N.D. Ill. Sept. 7, 2019) (defendant "did not know it was committing copyright infringement," and "was motivated not by an intent to infringe, but by a business necessity," and "expressed belief that it owned the rights to the" works); *Powers v. Caroline's Treasures Inc.*, 382 F. Supp. 3d 898, 904-05 (D. Ariz. 2019) ("[I]f they did remove CMI, it was done . . . *while* they had a valid license to use the images, which undercuts any allegation that the alleged CMI was removed to induce, enable, facilitate, or conceal infringement."); *Frost-Tsuji Architects v. Highway Inn, Inc.*, 2014 WL 5798282, at *8 (D. Haw.

Nor is there support for ELIAS's contention that ICE should have known that removal of CMI was likely to conceal infringement. Although Elias says that he types his name into search engines, he does not actually state that he finds infringing photos that way. ECF No. 50-1 at ¶ 13. At his deposition, Elias explained that he uses widely available image-matching software to flag potentially infringing photos. ECF No. 40 ¶ 48. And since Elias found "infringements" that do not have his CMI, Opp. at 14, he obviously didn't need the CMI to find them. In any event, ELIAS has no proof that ICE Portal ever knew or had reason to know that infringements were found by searching for CMI in the extended attributes. There is thus no evidence that ICE Portal had some reason to believe, at the time it made the photos available to OTAs, that any of its actions were likely to conceal infringement.[10] Accordingly, no reasonable jury could conclude that ICE Portal intended to induce, enable, facilitate, or conceal copyright infringement.

D.  **ICE Portal had an Implied License to Optimize Photos for Display on OTAs.**

Because ELIAS has failed to meet its burden to prove that Shiji removed CMI or distributed a work without CMI "without the authority of the copyright owner," 17 U.S.C. § 1202,[11] Shiji is entitled to summary judgment. The plain language of this section requires that, to be liable, the defendant must have had actual knowledge that it did not have "authority of the copyright owner" to remove CMI or to distribute without CMI. *Mango*, 970 F.3d at 172; *Gordon*, 345 F.3d at 926. It is undisputed that ICE did not have knowledge of the terms of

---

Nov. 7, 2014) ("[N]o Defendant can be said to have removed [CMI]" with the requisite intent because defendants "had an implied nonexclusive license to use" the works.).

[10] ELIAS argues that "a defendant's act of removal is sufficient evidence to allow a jury to determine its ultimate scienter." Opp. at 14. But ELIAS's cases rely on evidence other than the "act of removal" alone, and, unlike here, in those cases, the defendant itself infringed.

[11] ELIAS suggests that *Shiji* has the burden on this issue. Opp. at 19. But "the unambiguous wording of" § 1202 means that the defendant's lack of authority from the copyright owner is "*an element which Plaintiffs have the burden to show*." *Stevens v. Corelogic, Inc.*, 194 F. Supp. 3d 1046, 1053 n.5 (S.D. Cal. 2016), *aff'd*, 899 F.3d 666 (9th Cir. 2018).

8

ELIAS's licenses, ECF No. 40 ¶¶ 59-61,[12] and there is no genuine dispute that ICE Portal believed it had permission to modify photos as needed, without limitation, *id.* ¶ 66. ELIAS has pointed to nothing that contradicts ICE Portal's belief that it had authority to reproduce and modify the photos—even if CMI was removed as a side effect—based on the licenses granted in the MSAs.[13] ECF 40-2, Woodman Tr. at 20:15-21:6; ECF 40-3, McMahon Tr. at 162:8-14; ECF No. 40 ¶¶ 62-66; ECF No. 50 ¶¶ 62-66. ICE's general awareness of copyright laws and provisions in the MSAs ensuring that the hotels had the rights to the photos actually *support*, rather than contradict, this belief. And the Leonardo case had nothing to do with Starwood or Wyndham, so it does not relate to ICE's understanding of the Starwood and Wyndham MSAs. *See* ECF No. 40-53. Because there is no evidence that ICE had actual knowledge that it did not have the authority to remove CMI, it is entitled to summary judgment.

ELIAS has also failed to prove that ICE Portal did not have an implied license from ELIAS to remove information from extended attributes. By granting the hotels broad licenses to use its photos, knowing that they would be processed and displayed on OTAs, ECF No. 50 ¶ 80, ELIAS granted ICE Portal an implied license to modify the photos as necessary—including by removing information in the extended attributes.[14] It is undisputed that the licenses in effect

---

[12] ELIAS makes much of a provision in the Wyndham MSA (also in the Starwood MSA, contrary to ELIAS's assertion, ECF 40-20 at 4, ¶ 7(e)) allowing ICE to request licenses. But there was no need to request them because no one ever claimed that it did not have the authority it needed. ECF No. 40 ¶¶ 27-30. *UMG Recordings, Inc. v. Disco Azteca Distributors, Inc.* is inapposite; in that case, there was evidence that the defendant knew its use of the work infringed. 446 F. Supp. 2d 1164, 1174 (E.D. Cal. 2006). Here ELIAS admits that Shiji had the right to process the photos and that the OTAs had the right to display them online.

[13] ELIAS's conclusory assertion that the MSAs did not provide permission to remove CMI, ECF No. 50 ¶ 113, must be ignored. The plain language of the MSAs granted ICE authority to "modify (including standardize, optimize, crop or otherwise reformat for distribution," the photos provided by Starwood and Wyndham, without limitation. ECF No. 40 ¶¶ 62, 64.

[14] ELIAS argues that ICE did not have an implied license because there was no agreement directly between ELIAS and ICE. Opp. at 19. Yet, ELIAS admits that ICE had permission to

9

between ELIAS and the hotels between 2013 and 2018 did not make any reference to "metadata" or "extended attributes" and do not prohibit their removal, ECF No. 40 ¶ 54, even though ELIAS knew at the time he entered into the licenses that the photos would be used on OTAs and that OTAs displayed its photos without CMI in the metadata.[15] And ELIAS did not mention anything about CMI or metadata when it provided the photos to the hotels. ECF Nos. 52-5, 52-6. Under these facts, ICE had implied authority to remove information from the metadata when it optimized the photos for OTAs. *See Stevens*, 194 F. Supp. 3d at 1053-54; *R. Miller Architecture, Inc. v. Edgington Enterp., Inc.*, 2006 WL 2226297, at *5-6 (M.D. Fla. Aug. 3, 2006).

The fact that some licenses said "Credit: Victor Elias Photography" is not a requirement that the extended attributes always remain intact. Mr. Elias himself testified that this line means that he wanted credit when his photos appeared in certain types of ***print publications***. ECF No. 40-1, Elias Tr. at 38:2-39:1. Moreover, if "Credit: Victor Elias Photography" meant "keep all CMI intact," then there would have been no reason for ELIAS to try to sneak in such a provision in 2018. ECF No. 40 ¶ 57. And ELIAS does not explain why "Credit: Victor Elias Photography" would alert its licensees to the existence of information hidden in the non-visible extended attributes or make clear to them that the extended attributes can never be removed. The licenses therefore did not prohibit the removal of anything from the metadata.

Shiji therefore respectfully requests that the Court grant its summary judgment motion.

---

provide the photos to OTAs—without any agreement directly between the parties. ECF No. 50 ¶ 80. ELIAS therefore concedes that an implied license can exist without an agreement directly between the parties. *See also Dawes-Ordonez v. Realtor Ass'n of Greater Fort Lauderdale, Inc.*, 2010 WL 1791754, at *2-3 (S.D. Fla. May 5, 2010).

[15] It is undisputed that ELIAS knew the photos would be displayed on OTAs when it entered into the agreements. ECF No. 40 ¶ 6; ECF No. 50 ¶ 80. And ELIAS was aware by 2013 that thousands of its hotel photos were displayed on OTAs without CMI in the metadata. ECF No. 52-3 at ¶¶ 27-30. Despite that knowledge, ELIAS still chose not to include anything in the Starwood or Wyndham licenses about keeping CMI in the metadata intact.

Dated:  November 20, 2020	DUANE MORRIS LLP

/s/ *Karen Chuang Kline*
Karen Chuang Kline
kckline@duanemorris.com
1875 NW Corporate Boulevard
Suite 300
Boca Raton, FL 33431-8561
Tel:	561-962-2100
Fax:	561-962-2101

*and*

David J. Wolfsohn (PA Bar No. 57974)
djwolfsohn@duanemorris.com
*(admitted pro hac vice)*
Kendra C. Oxholm (PA Bar No. 325621)
*(admitted pro hac vice)*
Tyler R. Marandola (PA Bar No. 313585)
*(admitted pro hac vice)*
30 S. 17th Street
Philadelphia, PA 19103
Tel:	215-979-1000
Fax:	215-689-2739

*Attorneys for Shiji (US) Inc.*

**REQUEST FOR HEARING**

Shiji requests oral argument on this motion. In its response to Shiji's motion for summary judgment and statement of material facts, ELIAS attempts to confuse the Court into thinking there is a genuine dispute of material fact where there is none. ELIAS makes unsupported factual assertions, relies on inadmissible evidence, and misconstrues case law left and right, making it difficult for Shiji to adequately respond within the page limits of the Local Rules. ELIAS disputes or ignores material facts that are undisputed on any fair-minded reading of the record. For example, ELIAS's Responsive Statement of Facts acknowledges it is "undisputed" that ICE Portal never processed or possessed the 26 Marriott photos included in ELIAS's Amended Complaint. ECF No. 40, at ¶ 13; ECF No. 50, at ¶ 13. And yet ELIAS's brief continues to refer to the 26 Marriott photos as being at issue. ECF No. 48, at 1. Likewise, ELIAS purports to "dispute" that "OTAs were not violating ELIAS's rights by displaying its photographs because ELIAS allows its works to be displayed on such websites" despite Victor Elias agreeing word-for-word with that statement in his deposition. ECF No. 40 ¶ 7; ECF No. 50 ¶ 7. Oral argument is necessary in order for the parties to clarify the factual assertions made in each party's briefs and statements of facts, and to address the Court's questions about the genuineness and materiality of the factual disputes and the parties' legal positions.

## **CERTIFICATE OF SERVICE**

I, Karen Chuang Kline, hereby certify that, on this 20th day of November 2020, I caused a true and correct copy of the foregoing Reply in Support of Defendant's Motion for Summary Judgment to be served upon all counsel of record by CM/ECF:

*/s/ Karen Chuang Kline*
Karen Chuang Kline