## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 19-62173-CIV-SMITH

VICTOR ELIAS PHOTOGRAPHY, LLC,

      Plaintiff,

v.

ICE PORTAL, INC. and SHIJI (US), INC.,

      Defendants.

_____/

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter is before the Court on the Plaintiff's Motion for Partial Summary Judgment [DE 37], Defendant's Response [DE 51], and Plaintiff's Reply [DE 53]. Also, before the Court is Defendant Shiji (US), Inc.'s Motion for Summary Judgment [DE 39], Plaintiff's Response [DE 48], and Defendant Shiji (US), Inc.'s Reply [DE 57]. Plaintiff's First Amended Complaint [DE 11] contains a single count alleging Defendant[1] violated the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202, by removing or altering copyright management information from Plaintiff's photographs. Plaintiff moves for summary judgment on two discrete issues: (1) Plaintiff's ownership of valid copyrights in the images at issue in this case and (2) four of Defendant's affirmative defenses. Defendant seeks summary judgment on Plaintiff's single count of violating the DMCA. Because Plaintiff cannot establish one of the elements of its claim,

---

[1] In February 2019, Defendant ICE Portal, Inc. was acquired by Shiji (US), Inc. ("Shiji"), was merged into Shiji, and became a division of Shiji, rather than a separate company. Therefore, the Court will use the singular "Defendant," even though during the relevant time period the Defendants were separate entities.

Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Partial Summary

Judgment is denied as moot.

## I.     MATERIAL FACTS[2]

Victor Elias ("Elias") is a commercial photographer, who takes and licenses photographs

of hotels and resorts.  Elias is the manager and owner of Plaintiff, Victor Elias Photography, LLC

("Plaintiff"), which owns the copyrights to the photographs at issue.  Between 2013 and 2017, in

exchange for compensation, Elias took the photographs that are at issue in this matter for hotels

owned and operated by Starwood Hotels & Resorts Worldwide, Inc. ("Starwood") and Wyndham

Hotels & Resorts ("Wyndham").  Elias testified that he provided the photographs directly to the

individual hotels, not to the corporate offices.  (Elias Dep. [DE 40-1] 34:20-35:5.)  Plaintiff claims

that the following information was inserted into the metadata embedded within the image files sent

to the hotel properties:

| | |
|---|---|
| Creator | Victor Elias |
| Creator's Job Title | Owner/Photographer |
| Copyright Notice | @Victor Elias |
| Creator's Contact Info | USA, 5301 N. Commerce Ave., Suite 4, 805-265-5421 |
| Rights Usage Terms | Rights Managed |

This information is known as copyright management information, or CMI.  The information is not

visible when a photo is viewed online, unless a viewer undertakes several steps, or clicks.  The

hotels were licensed to use the at-issue photos to market their hotels on their websites and on third-

party travel websites ("online travel agents" or "OTAs"), such as Expedia and Travelocity.

Defendant acts as an intermediary between hotel chains, like Starwood and Wyndham, and

OTAs by receiving copies of photos from the hotel suppliers, optimizing the photos for use by

OTAs, and making the photos available to OTAs.  During the relevant time period, 2013-2018,

---

[2] Record citations are not included for facts that are undisputed based on the parties' statements of facts and responses thereto.

Defendant's automated software downloaded copies of image files from Starwood's and Wyndham's corporate offices and stored them on Defendant's server.  Each image file provided to Defendant came with a  separate spreadsheet file referred to by Defendant, the hotel suppliers, and the OTAs as the "metadata" file, which contained information that OTAs would need to describe the photos on their websites, such as the room type and a caption for the photo.  Prior to and during the relevant time period, no hotel supplier or OTA had ever asked Defendant to preserve extended attributes in the copies of the images that were made available by Defendant to OTAs.

After obtaining copies of the original image files and the associated metadata files, Defendant's automated software would make multiple JPEG copies of the photos in various industry standard sizes that were optimized for faster display on the internet by OTAs.  In the process of making the JPEG copies of the images, Defendant's software may remove the extended attributes of the original file.  (McMahon Dep. [DE 40-3] 179:6-180:19.)  "Extended attributes" refers to information that is embedded in an image file, such as Plaintiff's CMI.  The JPEG files in industry standard sizes, along with the associated metadata files, were saved to Defendant's server and made available for OTAs to access.  Defendant's software does not allow it to know whether a photo is being displayed on an OTA's website.  Prior to this litigation, no photographer or copyright owner ever asked Defendant to preserve extended attributes in the copies of the images that Defendant makes available to OTAs.

Plaintiff found copies of his photos, without CMI, posted on non-party, non-OTA websites.  Additionally, a few of the photos actually included a visible credit, which credited the photo to someone other than Plaintiff.  Plaintiff claims that these websites infringed on his copyrights by displaying the photos without license or authorization.  Plaintiff does not have actual knowledge of how these websites obtained the infringing photos.  The at-issue photos were publicly available, with the embedded CMI, on Starwood's and Wyndham's websites, as well as on Plaintiff's

website.  On Plaintiff's website, the images also include a visible watermark.  According to Elias, anyone "with a little bit of knowledge" in Photoshop, or other such software, can alter the image and remove the watermark.  (Elias Dep. 10:19-12:18.)  In fact, he has found that watermarks are "not that effective" at stopping people from taking the images.  (*Id.*)  It is possible for someone to go to the hotels' websites and create a screenshot of the images, which would not capture any of the extended attributes, including Plaintiff's CMI.  Plaintiff has never contacted the OTAs about displaying his images without the CMI in the extended attributes.

Plaintiff uses various methods to search for copies of its photos online: (1) Elias visits OTA websites, types in the names of locations where he has shot photos of a hotel, then looks for the hotels he shot, and then looks for the images (Elias Dep. 133:7-11); (2) Elias Googles the hotel name plus "Victor Elias" (*id.* at 133:14-19); (3) Elias uses ImageRights software, which searches for visual image matches on the internet (*id.* at 178:1-7); (4) Elias uses TinEye which searches for copies of images he uploads (*id.* at 214:12-215:8); and (5) Elias uses Google images to search for copies of the photos (*id.*).  According to Elias, he also uses Google to search using keywords such as "Victor Elias" and "Victor Elias Photography," which can result in the return of pages containing keywords in the embedded metadata.  (Elias Decl. [DE 50-1] ¶ 13.)

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001).  Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  The

Court must view the record and all factual inferences therefrom in the light most favorable to the non-moving party and decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson*, 477 U.S. at 251-52)).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

## III.  DISCUSSION

The Amended Complaint alleges a single count for violation of the DMCA. Plaintiff alleges Defendant violated two subsections of the DMCA. The first subsection states:

> (a) False copyright management information.--No person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement--
> (1) provide copyright management information that is false, or
> (2) distribute or import for distribution copyright management information that is false.

17 U.S.C. § 1202(a). The second subsection states, in relevant part:

> No person shall, without the authority of the copyright owner or the law--
> (1) intentionally remove or alter any copyright management information,
>
> * * *
>
> or
> (3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,

5

knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

17 U.S.C. § 1202(b). Section 1203(b) contains a so-called "double-scienter" requirement because a defendant must (1) intentionally remove CMI, under subpart (a), or distribute works knowing that the CMI has been removed, under subpart (b), and (2) have actual or constructive knowledge that such distribution will induce, enable, facilitate, or conceal an infringement. *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020) (citing 17 U.S.C. § 1202(b)(3)).

Defendant argues that it is entitled to summary judgment because (1) there is no evidence that it had intent to, knew, or had reason to know that its actions would "induce, enable, facilitate, or conceal infringement," a requirement under both subsection (a) and (b) of the DMCA; (2) there is no evidence that it intended to remove any CMI; and (3) Plaintiff cannot show that Defendant removed CMI knowing it did not have the authority of the copyright owner.

Defendant maintains that because Defendant had permission to provide the images to the OTAs and the OTAs were allowed to display the images, Plaintiff must provide "specific evidence" that future infringement by a third party is likely to result from Defendant's removal or alteration of the CMI. In response, Plaintiff argues that whether Defendant acted with knowledge is a question for a jury and that there is evidence that, at a minimum, Defendant had reasonable grounds to know that its acts would induce, enable, facilitate, or conceal infringement.

Defendant relies primarily on *Stevens v. Corelogic, Inc.*, 899 F.3d 666 (9th Cir. 2018), to support its contention that Plaintiff has not, and cannot, meet is burden of establishing that Defendant knew or had reason to know that its actions would induce, enable, facilitate, or conceal infringement. In *Stevens*, real estate photographers sued a software developer that provided software to multiple listing services. *Id.* The photographers licensed their photos to real estate

agents, who then uploaded the images to multiple listing services. *Id.* at 670. The defendant's software resizes the uploaded images to aid in storage, computer display, and speed of display. *Id.* at 671. When images are resized using the software, metadata attached to the images is not retained. *Id.* The photographers alleged a violation of § 1202(b), arguing that "because one method of identifying an infringing photograph has been impaired, someone *might* be able to use their photographs undetected." *Id.* at 673 (footnote omitted, emphasis in original). The *Stevens* Court found that this was insufficient to meet the knowledge requirement of § 1202(b), explaining:

> To avoid superfluity, the mental state requirement in Section 1202(b) must have a more specific application than the universal possibility of encouraging infringement; specific allegations as to how identifiable infringements "will" be affected are necessary.
>
> * * *
>
> [K]nowledge in the context of such statutes signifies "a state of mind in which the knower is familiar with a pattern of conduct" or "aware of an established modus operandi that will in the future cause a person to engage in" a certain act. [*United States v. Todd,* 627 F.3d 329, 334 (9th Cir. 2010).] Applying that concept here, we hold that a plaintiff bringing a Section 1202(b) claim must make an affirmative showing, such as by demonstrating a past "pattern of conduct" or "modus operandi", that the defendant was aware or had reasonable grounds to be aware of the probable future impact of its actions.
>
> * * *
>
> In short, to satisfy the knowledge requirement, a plaintiff bringing a Section 1202(b)(1) claim must offer more than a bare assertion that "when CMI metadata is removed, copyright infringement plaintiffs . . . lose an important method of identifying a photo as infringing." Instead, the plaintiff must provide evidence from which one can infer that future infringement is likely, albeit not certain, to occur as a result of the removal or alteration of CMI.

*Stevens*, 899 at 674-75.

Under *Stevens*, Plaintiff has not established one of the elements of a claim under § 1202 – that Defendant knew or had reason to know that its actions would induce, enable, facilitate, or conceal infringement. Plaintiff has presented no evidence demonstrating that Defendant was aware or had reasonable grounds to be aware of the probable future impact of its actions. While Plaintiff maintains that Defendant had a modus operandi of removing Plaintiff's CMI, such

evidence alone does not establish that Defendant knew or had reasonable grounds to know that such actions would induce, enable, facilitate, or conceal infringement. Plaintiff has not shown that Defendant's removal of CMI is the reason, or even the likely reason, for the infringing use of the images Plaintiff has found on the internet. Because the images are available elsewhere on the internet, including the hotel websites and Plaintiff's website, and given Plaintiff's concession that the infringing images could be copied from any of those websites without copying the CMI, or the CMI could be removed after copying, Plaintiff has not shown that Defendant knew or should have known that its removal of CMI would induce, enable, facilitate, or conceal infringement.

Plaintiff also maintains that it has met its burden by showing that removal of the CMI had practical significance to it in policing copyright infringement of its images. While Plaintiff declared that using keyword searches that would search the CMI was one of the methods he used to search for infringement, Plaintiff has offered no evidence that this is actually an effective method for finding infringement. Moreover, Plaintiff has not shown how this establishes that Defendant either intended to or knew that its actions were likely to induce, enable facilitate, or conceal infringement. There is no evidence that Defendant was aware that searching for terms embedded in extended attributes of images was a method used by copyright holders to find infringement on the internet. Thus, Plaintiff cannot meet its burden of establishing intent or knowledge.

Plaintiff's reliance on *Mango v. BuzzFeed Inc.*, 970 F3d 167 (2nd Cir. 2020), is misplaced. In *Mango*, the defendant published a picture without permission and without attribution or CMI. *Id.* at 169. The photographer sued for copyright infringement and under § 1202(b). *Id.* at 170. The circuit court upheld the district court's finding that the defendant had violated the DMCA because the defendant distributed the photo knowing that the photographer's CMI had been removed and knowing that distributing it with a false credit would conceal the fact that the defendant did not have authority to use the photo. *Id.* at 172. Thus, in *Mango*, the defendant knew

its actions were likely to induce, enable, facilitate, or conceal infringement because its actions were an attempt to conceal its own infringement. *See id.* at 173. The *Mango* court distinguished *Stevens*, noting that the *Stevens* plaintiffs "did not allege—let alone prove—an underlying claim of copyright infringement that would support the knowing concealment of either that infringement or another." The *Mango* court concluded that their decision was not in tension with *Stevens* because that case did not address whether a defendant's own infringement satisfies § 1202(b)'s second scienter requirement. *Id.* at 174. For the same reason, *Mango* is not applicable here – Defendant did not infringe.

For similar reasons, Plaintiff's reliance on *Jedson Engineering, Inc. v. Spirit Construction Services, Inc.*, 720 F. Supp. 2d 904 (S.D. Ohio 2010), is unavailing. In *Jedson*, the defendants themselves infringed. Plaintiff relies on *Jedson* for the proposition that an indemnity clause is evidence that creates a genuine issue of material fact as to whether the defendant had reasonable grounds to know that the removal of CMI would induce, enable, facilitate, or conceal an infringement. In *Jedson*, one defendant hired another defendant to submit plans for a construction project based on the plaintiff's plans and the defendants conceded that copying of the plaintiff's plans occurred. *Id.* at 911, 919. The defendant that copied from the plaintiff's plans insisted on the inclusion of an indemnity clause in the contract between itself and the defendant that obtained access to the plaintiff's drawings. *Id.* at 931. The indemnity clause was to protect the copying defendant if there was an issue regarding rights to the plaintiff's drawings. *Id.* Thus, the defendant insisting on the indemnity clause knew it was copying someone else's work and insisted on the clause to protect itself in case it did not have the right to do so. The *Jedson* defendants were sued for copyright infringement, in addition to the DMCA. *Id.* at 911-12. The situation in the instant case is different. While Defendant also had indemnity clauses in its contracts with the hotel

9

suppliers, Defendant's use of the photos was not infringement.  Accordingly, *Jedson* does not prevent summary judgment here.

Finally, Plaintiff argues that Defendant has knowledge of the DMCA, was previously sued under the DMCA for removing CMI, and, therefore, knew or should have known that removing the CMI from Plaintiff's photos would induce, enable, facilitate, or conceal infringement.  First, Plaintiff has not shown how mere familiarity with the DMCA makes Defendant know or, have reasonable grounds to know, that its removal of CMI from Plaintiff's photos would induce, enable, facilitate, or conceal an infringement of those photos.  Second, Plaintiff's reliance on the earlier dispute does not help it.  In the earlier dispute, the arbitration panel found that the plaintiff in that dispute had not shown that Defendant's removal of CMI would result in infringement.  (Arbitration Order [DE 40-53] at 12.)  Thus, Plaintiff has not provided any authority or evidence to establish that, under the circumstances in this case, Defendant knew or should have known that its actions would induce, enable, facilitate, or conceal an infringement.  Consequently, Plaintiff cannot establish one of the elements of its claim and Defendant is entitled to summary judgment.

Accordingly, it is

**ORDERED** that:

1.      Defendant Shiji (US), Inc.'s Motion for Summary Judgment [DE 39] is **GRANTED.**

2.      Plaintiff's Motion for Partial Summary Judgment [DE 37] is **DENIED as moot.**

3.      All pending motions not otherwise ruled upon are **DENIED as moot.**

4.      The Court will enter a separate judgment.

5.      This case is **CLOSED.**

**DONE AND ORDERED** in Fort Lauderdale, Florida this 3rd day of May, 2021.

_____

**RODNEY SMITH**
**UNITED STATES DISTRICT JUDGE**

cc:  All counsel of record