UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CV-62173-SMITH/VALLE

VICTOR ELIAS
PHOTOGRAPHY, LLC,

    Plaintiff,

v.

ICE PORTAL, INC.,

    Defendant.

_____/

**REPORT AND RECOMMENDATION TO DISTRICT JUDGE**

THIS MATTER is before the Court upon Defendant's Verified Motion for Attorneys' Fees (ECF No. 81) (the "Motion"). United States District Judge Rodney Smith referred the Motion to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636. (ECF No. 95). Having reviewed the Motion, Plaintiff's Response (ECF No. 83), Defendant's Reply (ECF No. 86), the parties' Supplemental Briefs (ECF Nos. 99, 103), Defendant's Notice of Previously Awarded Fees and Costs (ECF No. 106), and being otherwise duly advised in the premises, the undersigned recommends the Motion be **DENIED** for the reasons discussed below.

    **I.**    **BACKGROUND AND PROCEDURAL HISTORY**[1]

In 2016, commercial photographer Victor Elias discovered infringing uses of his copyrighted images on the internet. (ECF No. 92 at 5) (Eleventh Circuit Order affirming summary judgment). In August 2019, instead of pursuing the infringing parties, Plaintiff brought this lawsuit

---

[1] The factual background is adopted from the Eleventh Circuit's decision affirming the District Court's grant of summary judgment in Defendant's favor, and the underlying Order for summary judgment, which are incorporated herein.  *See generally*, (ECF Nos. 77, 92).

against Defendant Ice Portal, now a division of Shiji (US), Inc., alleging that Defendant violated the Digital Millennium Copyright Act (the "DMCA"), 17 U.S.C. § 1202, by removing or altering the copyright management information ("CMI") in Plaintiff's photographs.[2] (ECF No. 1). Thereafter, Plaintiff filed its Amended Complaint. (ECF No. 11) (the "Amended Complaint").

According to the single-count Amended Complaint, Defendant acted as an intermediary between hotels (Starwood and Wyndham)[3] that licensed Plaintiff's images and online travel agents ("OTAs"), like Expedia and Travelocity. (ECF No. 92 at 5). In optimizing the photographs for use by OTAs, Defendant's software allegedly removed certain CMI that Plaintiff had embedded within the metadata of the photographs. *Id*. Plaintiff found copies of his photos, without CMI or wrongly accrediting someone else, posted on non-party, non-OTA websites. (ECF No. 77 at 3).

In November 2019, Defendant filed its answer and affirmative defenses to the Amended Complaint. (ECF No. 12). In the two years of litigation that followed, the parties engaged in substantial discovery and motion practice, attended mediation, and prepared for trial. *See, e.g.*, (ECF No. 29) (Defendant's Motion to Compel Discovery); (ECF No. 33) (Mediator's Report); (ECF No. 36) (Plaintiff's Motion for Spoliation Instruction); (ECF Nos. 37, 39) (cross Motions for Summary Judgment); (ECF No. 62) (Defendant's Motion in Limine); (ECF No. 74) (Joint Pretrial Stipulation); (ECF No. 75) (Plaintiff's Proposed Jury Instructions). Although Defendant did not file a motion to dismiss either the initial Complaint or the Amended Complaint, the parties filed cross Motions for Summary Judgment. (ECF Nos. 37, 39).

---

[2] CMI metadata is copyright identifying information that is manually added to the image by the photographer or editor. (ECF No. 92 at 7 n.4). It is not visible when the photo is viewed online, unless the viewer undertakes several steps, or clicks, to access the information. (ECF No. 77 at 2).

[3] Starwood was subsequently acquired by Marriott. (ECF No. 81 at 6).

In May 2021, the Court granted Defendant's Motion for Summary Judgment. *See* (ECF Nos. 39, 77). In so doing, the Court found that Plaintiff failed to offer any evidence that Defendant knew that its removal of CMI from Plaintiff's images would facilitate or conceal future copyright infringement by others, which is a necessary element of a DMCA violation. (ECF No. 77 at 10). Thereafter, the Court entered Final Judgment in favor of Defendant. (ECF No. 78). Plaintiff appealed the dismissal, and the Eleventh Circuit affirmed the District Court's decision. *See* (ECF Nos. 79, 92). The instant Motion followed.[4] (ECF No. 81).

In the Motion, Defendant requests an award of $526,958.55 in attorneys' fees.[5] (ECF Nos. 81 at 9, 81-1 at 13). According to Defendant, Plaintiff is a copyright troll, who brought this suit "in an effort to extract an exorbitant settlement, despite having no factual or legal basis for its claim." (ECF No. 81 at 6, 7). As evidence of Plaintiff's bad faith, Defendant points to Plaintiff's disregard of the Ninth Circuit's decision in *Stevens v. CoreLogic*,[6] which was decided before Plaintiff filed this lawsuit and brought to Plaintiff's attention by defense counsel. *Id*. at 6. Defendant also points to Plaintiff's creation of "fake licenses" to "dupe Marriott" into believing that the original Starwood licenses included explicit language prohibiting removal of CMI, which they did not. *Id*. According to Defendant, an award of attorneys' fees is appropriate because it has shown that Plaintiff's case was at least objectively unreasonable (if not frivolous) in light of

---

[4] The Motion was terminated pending appeal but was reinstated once the Eleventh Circuit issued its decision. *See generally* (ECF Nos. 87, 92, 94).

[5] Following the parties' pre-filing conferral on the Motion, Defendant reduced its fee request from $554,310.45 in an effort to address Plaintiff's objections to certain billing entries. (ECF Nos. 81 at 9, 81-1 at 13).

[6] 899 F.3d 666 (9th Cir. 2018). In *Stevens*, the Ninth Circuit held that a plaintiff's failure to show a non-infringing defendant's knowledge of the future effects of his action was fatal to a DMCA claim. 899 F.3d at 675.

3

*Stevens* and brought and litigated in bad faith. *Id.* at 7. Defendant further argues that an award of fees would promote the goals of the DMCA "by compensating a prevailing defendant for standing on its legal rights and by deterring plaintiffs like [Elias] from pursuing unreasonable claims." *Id.*

## II.  LEGAL STANDARDS

Under the "American Rule," litigants are not entitled to an award of attorneys' fees for prevailing in litigation "unless a statute or contract provides otherwise." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 382 (2013) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010)); *see also In re Martinez*, 416 F.3d 1286, 1288 (11th Cir. 2005). Pursuant to 17 U.S.C. § 1203, however, Congress has provided for the award of attorneys' fees in DMCA litigation. Under the DMCA, the Court has discretion to allow the recovery of reasonable attorneys' fees to the prevailing party. *See* 17 U.S.C. § 1203(b)(5).

Here, there is no dispute that Defendant is the prevailing party by virtue of having obtained summary judgment in its favor. *See generally* (ECF No. 83) (Plaintiff's response challenging Defendant's application of the *Fogerty* factors, but not contesting Defendant's prevailing party status); *see also Head v. Medford,* 62 F.3d 351, 355 (11th Cir. 1995) (explaining that a defendant prevails where summary judgment is entered in its favor). Moreover, in determining whether to award fees, a court "should not consider whether the losing party can afford to pay fees, but whether imposition of fees will further the goals of the [DMCA]." *Strategic Mktg., Inc. v. Great Blue Heron Software, LLC,* No. 15-CV-80032, 2017 WL 1224773, at *2 (S.D. Fla. Feb. 16, 2017).

But this does not end the fees inquiry on copyright cases. In determining whether to award fees in a DMCA case, the Court must consider several non-exhaustive factors discussed in *Fogerty v. Fantasy, Inc.,* 510 U.S. 517 (1994). Under *Fogerty*, the Court considers: (i) whether the action was frivolous; (ii) the motivation behind the action; (iii) whether the claims were objectively unreasonable, both in the factual and legal components of the case; and (iv) the need to advance

considerations of compensation and deterrence.[7]  *Fogerty*, 510 U.S. at 535; *see MiTek Holdings, Inc. v. Arce Eng'g Co.*, 198 F.3d 840, 842-43 (11th Cir. 1999) (discussing application of *Fogerty* factors to Copyright Act action); *see also Acosta v. Mega Media Holdings, Inc.*, No. 15-CV-21837, 2017 WL 11680177, at *9 (S.D. Fla. Mar. 2, 2017), *report and recommendation adopted*, 2017 WL 11680178, at *1 (S.D. Fla. Mar. 28, 2017) (applying *Fogerty* factors to prevailing party fee request in Copyright Act case).  Courts have also considered the degree of success obtained in the litigation.  *See Lil' Joe Wein Music, Inc. v. Jackson*, No. 06-CV-20079, 2009 WL 2688117, at *5 (S.D. Fla. July 1, 2008).

No single factor is determinative, and a prevailing party need not meet all *Fogerty* factors to be entitled to fees.  *See Fantasy Inc. v. Fogerty*, 94 F.3d 553, 558 (9th Cir. 1996); *Oravec v. Sunny Isles Luxury Ventures L.C.*, No. 04-CV-22780, 2010 WL 1302914, at *4 (S.D. Fla. Mar. 31, 2010) ("No single consideration under *Fogerty* is determinative."); *Strategic Mktg.*, 2017 WL 1224773, at *2 (explaining the non-exclusive *Fogerty* factors).  Furthermore, because there is no precise rule or formula for making these determinations, application of these factors is left to the discretion of the court on a case-by-case basis.  *See Fogerty,* 510 U.S. at 534 (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 436-37 (1983)); *Professional LED Lighting, Ltd. v. AAdyn Tech., LLC*, 88 F. Supp. 3d 1356, 1376 (S.D. Fla. 2015); *see also Mizioznikov v. Forte*, No. 16-CV-61616, 2017 WL 5642383, at *7 (S.D. Fla. Mar. 27, 2017).  Where a defendant prevails in a copyright case, there is a strong presumption in favor of awarding fees.  *Korman v. Iglesias*, No. 18-CV-

---

[7] Initially, the *Fogerty* factors applied to attorneys' fees under the Copyright Act, 17 U.S.C. § 505. The *Fogerty* factors, however, have been extended to apply to actions under the DMCA, 17 U.S.C. § 1203. *See*, *e.g.*, *Frost-Tsuji Architects v. Highway Inn, Inc.*, No. 13-CV-00496, 2015 WL 5601853, at *4 (D. Haw. Sept. 23, 2015) (applying *Fogerty* factors to fees in Copyright Act and DMCA context).

5

21028, 2018 WL 6978693, at *2 (S.D. Fla. Dec. 6, 2018); *Lil' Joe Wein*, 2008 WL 2688117, at *4. Nonetheless, a court may not award fees as a matter of course, but must make a particularized, case-by-case assessment of the appropriateness of fees. *Kirtsaeng v. John Wiley & Sons, Inc.,* 579 U.S. 197, 202 (2016).

### III.  DISCUSSION

Having found that the DMCA permits an award of fees to Defendant as the prevailing party in this litigation, the undersigned next considers the *Fogerty* factors and the circumstances of this case to determine whether a fee award is appropriate. After evaluating these factors and the circumstances of this litigation, the undersigned finds that an award of fees is unwarranted. Each factor is addressed below.

#### A.  Degree of Success in the Action

Although the parties dispute many of the factual and legal issues underlying the litigation, Defendant was fully successful, both at the District Court level and on appeal to the Eleventh Circuit. *See generally* (ECF Nos. 77, 92). Consequently, Defendant's complete success favors an award of attorneys' fees. *Strategic Mktg.,* 2017 WL 1224773, at *2 (citing *Kirtsaeng*, 136 S. Ct. at 1989); *see also Lil' Joe Wein*, 2008 WL 2688117, at *5.

#### B.  Frivolousness and Objective Unreasonableness of Plaintiff's Claims

In evaluating the frivolousness and objective unreasonableness of Plaintiff's claims, the Court examines both the factual and legal components of a claim throughout the litigation. *See Oravec,* 2010 WL 1302914, at *5; *Strategic Mktg.*, 2017 WL 1284773, at *2. This factor favors an award of fees to the defendant where a claim lacks merit. *See Katz v. Chevaldina*, 127 F. Supp. 3d 1285, 1298 (S.D. Fla. Aug. 27, 2015) (noting that "lack of merit" in the claims weighs in favor of a fee award) (quoting *Jenkins v. Jury,* No. 07-CV-133, 2009 WL 248232, at *3 (M.D. Fla. Feb.

2, 2009)). Moreover, a claim moves from objectively unreasonable to frivolous where the result is obvious or the arguments are entirely without merit. *See Acosta*, 2017 WL 11680177, at *9 (collecting cases where the claim was deemed frivolous under this *Fogerty* factor).

Defendant argues that Plaintiff's case was at least objectively unreasonable, if not frivolous, "from the very beginning" because Plaintiff had no evidence of Defendant's knowledge of the probable effect of its actions on future infringement. (ECF No. 81 at 10-14); *see* 17 U.S.C. § 1202(b) (prohibiting conduct where defendant "know[s] or, [has] reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title"). In arguing that Plaintiff's case lacked merit from the start, Defendant references several gaps in Plaintiff's case: (i) given the broad licenses Plaintiff granted to Starwood and Wyndham hotels, Plaintiff could not prove (and had no reason to believe) that the third-parties were actually infringing; (ii) Plaintiff had no way of proving whether the third-parties obtained the photos from OTAs or elsewhere, as opposed to from Defendant; (iii) Plaintiff could not prove that removal of CMI significantly limited Plaintiff's ability to police copyright infringement; and (iv) Plaintiff was aware that *Stevens* required Plaintiff to show Defendant's knowledge of the effect of its conduct on future infringement under 17 U.S.C. § 1202(b). (ECF No. 81 at 12-13).

In response, Plaintiff acknowledges that it "was aware of the 9th Circuit's decision in *Stevens* . . . and its holding that to satisfy the knowledge requirement, a DMCA plaintiff must make specific allegations as to how identifiable infringements 'will be affected' and 'provide evidence from which one can infer that future infringement is likely, although not certain, to occur as a result the removal or alteration of CMI.'" (ECF No. 83 at 11). Nonetheless, Plaintiff argues that *Stevens* is distinguishable and inapplicable because Defendant's knowledge can be inferred from certain facts, including, among other, evidence that: (i) in 2016, Defendant participated in arbitration after

being accused of removing CMI from another competitor; and (ii) Defendant negotiated an indemnification agreement with the hotels to protect itself from the legal consequences of the CMI-removal software, thus enabling Defendant to remain "willfully blind" about the identity of copyright holders for the photographs. *Id*. at 12. These arguments, however, were previously rejected by the District Judge and are similarly rejected here. *See* (ECF No. 77 at 7-10). But the fact that a party lost at trial or summary judgment does not mean that its case was frivolous or objectively unreasonable. *See Olem Shoe Corp. v. Washington Shoe Co.*, No. 09-CV-23494, 2015 WL 11669133, at *20 (S.D. Fla. Oct. 5, 2015), *report and recommendation adopted* (S.D. Fla. June 28, 2017) (ECF No. 614) ("Not every unsuccessful claim or defense will merit a finding of objective unreasonableness and '[t]he mere fact that summary judgment was granted to [the defendant], in and of itself, also does not speak to whether [the p]laintiff's claims were 'objectively unreasonable.'") (quoting *Corwin v. Walt Disney World Co.*, No. 02-CV-1377, 2008 WL 754697, at *7 (M.D. Fla., Mar. 18, 2008)).

Indeed, after considering the circumstances of this case, the undersigned finds that Plaintiff's claims were not frivolous or objectionably unreasonable. First, there is no indication that either the District Court or the Eleventh Circuit suspected Plaintiff's DCMA claim was frivolous or objectively unreasonable. As the Eleventh Circuit noted in affirming summary judgment, "[i]nterpretation of Section 1202(b) is an issue of first impression in this Circuit." (ECF No. 92 at 14). A claim based on an issue of first impression is not objectively unreasonable. *Thompkins v. Lil' Joe Records, Inc.*, No. 02-CV-61161, 2008 WL 896898, at *6 (S.D. Fla. Mar. 31, 2008); *see also* (ECF No. 83 at 12-13) (Plaintiff's argument that this is an issue of first impression in this District and Circuit and that the Court is "not beholden to the 9th Circuit's opinion in *Stevens*"). Having granted oral argument, which is reserved for appeals of merit, the

Eleventh Circuit afforded Plaintiff's arguments serious consideration, as reflected in a 29-page order affirming summary judgment. *See Alvarez v. School Board of Miami-Dade Cnty.*, No. 17-CV-22556, 2021 WL 1099842, at *3 (S.D. Fla. Mar. 23, 2021) ("Typically, an appeal that is 'frivolous' will not be scheduled for oral argument.") (citing 11th Cir. R. 34-3(a)); *see generally* (ECF No. 92). For example, in discussing Plaintiff's argument that Defendant's knowledge could be inferred from, among things, Defendant's involvement in a 2016 arbitration for allegedly removing CMI from a competitor's images, the Eleventh Circuit wrote: "This is a tempting inference to make but it is insufficient to raise a genuine issue of material fact as to the second [knowledge] requirement . . . ." *Id*. at 17. Thus, although the Eleventh Circuit rejected (as did the District Court) Plaintiff's proffered basis from which to infer Defendant's knowledge, the decision nonetheless reflects the Circuit Court's deliberate analysis of Plaintiff's claim. *See id.* at 18-27. In sum, nothing in the Eleventh Circuit's decision remotely implies that Plaintiff's claim was frivolous or objectively unreasonable.

Similarly, the District Court's order granting summary judgment thoroughly considered Plaintiff's factual allegations and legal arguments. *See generally* (ECF No. 77). Although the District Court ultimately rejected Plaintiff's factual and legal positions and ruled in favor of Defendant on the knowledge requirement, nothing in the District Court's Summary Judgment Order paints Plaintiff's claim as frivolous or objectively unreasonable. *See generally Oravec*, 2010 WL 1302914, at *5 (defining objectively unreasonable claim). For example, although the District Court distinguished the caselaw on which Plaintiff relied, it did not find any to be markedly off-point or objectively unreasonable. *See* (ECF No. 77 at 8-10). Moreover, the District Court's dismissal of Plaintiff's claim at summary judgment does not, without more, render the claim

9

objectively unreasonable. *See Corwin,* 2008 WL 754697, at *7; *FASA Corp. v. Playmates Toys, Inc.,* 1 F. Supp. 2d 859, 864 (N.D. Ill. 1998).

Lastly, the litigation history further supports the undersigned's conclusion that Plaintiff's claim was not frivolous or objectively unreasonable. During two years of litigation, the parties engaged in discovery, filed motions, and prepared for trial. *See* (ECF No. 81 at 8). Although Defendant now argues that Plaintiff's claim was frivolous and/or objectively unreasonable from the start, Defendant did not file a motion to dismiss Plaintiff's purportedly baseless claim or seek sanctions for the purported frivolous claim. Thus, the litigation history also weighs against a finding of frivolousness.

### C.  Motivation

The next factor to consider is Plaintiff's motivation in bringing suit. *See Acosta*, 2017 WL 11680177, at *10 (collecting cases discussing motivation for purposes of attorneys' fee award). Defendant argues that this factor weighs in its favor because Plaintiff is a copyright troll who brought suit solely to extract a significant settlement. *See* (ECF No. 81 at 6, 7, 15-16). In support of this argument, Defendant points out that Plaintiff: (i) filed six copyright lawsuits against other defendants in the past eight years, all of which settled early in litigation; (ii) never contacted or sought discovery from the OTAs or the alleged third-party infringers; and (iii) allegedly created "fake" duplicate licenses to support its settlement demand for hundreds of thousands of dollars by adding language that "all metadata within the images . . . shall remain intact." *Id*. at 15-16. Lastly, Defendant asserts that Plaintiff claimed entitlement to up to $5.5 billion in damages, without having any evidence of actual damages resulting from Defendant's purported conduct. *Id.* at 15. According to Defendant, these actions reflect Plaintiff's improper motivation and bad faith in

bringing this lawsuit. *Id.* Thus, Defendant argues Plaintiff was not concerned with protecting its copyright, but was focused solely on extracting a settlement from the deepest pocket. *Id*.

Plaintiff, on the other hand, denies that it is a copyright troll or that it acted in bad faith in bringing this lawsuit. (ECF No. 83 at 13-16). Rather, Plaintiff explains that filing six suits in eight years is not excessive and was necessary to protect itself from "mass infringement." *Id*. at 14-15. As to damages, Plaintiff states that although the Joint Pretrial Stipulation noted the full range of available statutory damages under 17 U.S.C. § 1202(c)(3)(B), Plaintiff never sought billions in damages, instead demanding the statutory minimum ($2,500 per violation) during settlement discussions. *Id*. at 16 n.7. According to Plaintiff, it offered to settle the claim in August 2018 for $650,000, which was a reasonable figure.[8] (ECF No. 81-4 at 13-14). Plaintiff also denies creating "fake" licenses for Marriott. (ECF No. 83 at 15-16). Rather, Plaintiff claims it merely provided duplicate licenses to Marriott (who could not locate the original Starwood licenses) and added the metadata language as a "belts and suspenders" clarification of its existing prohibition on removal of its CMI, and clearly dated the duplicate licenses April 2018. *Id*. at 15-16.

After considering the parties' arguments and the circumstance of this case, the undersigned finds that this factor weighs in favor of Plaintiff and against an award of fees. First, Plaintiff is entitled to protect its copyrighted works. *See Luken v. Int'l Yacht Council, Ltd.*, 581 F. Supp. 2d 1226, 1245 (S.D. Fla. 2008) ("It goes without saying that protection of one's copyright constitutes a permissible motivation in filing a copyright infringement case . . . ."). On this point, the Eleventh Circuit took no issue with Plaintiff's motivation and itself noted that "[p]rotecting his copyrights

---

[8] Pursuant to Plaintiff's calculation, minimum statutory damages under 17 U.S.C. § 1202 totaled $525,000, so that an initial demand of $650,000 was a reasonable settlement position. *See* (ECF No. 81-6 at 2).

11

is important to Mr. Elias." (ECF No. 92 at 9). Moreover, the fact that Plaintiff filed six cases in eight years, without more, does not strike the Court as excessive or indicative of the actions of a copyright troll. Similarly, Plaintiff's $650,000 settlement demand does not appear exorbitant, as it was not much greater than the permissible statutory minimum damages per claim. *See* (ECF No. 81-6 at 2). Lastly, the undersigned accepts Plaintiff's explanation that it was most cost-effective to sue Defendant "as a practical matter to achieve the highest level of current and future protection for its copyright-protected works," than to sue "dozens of disparate infringers scattered internationally in multiple lawsuits." (ECF No. 83 at 16).

### D. Advancing Considerations of Compensation and Deterrence

The final *Fogerty* factor requires the Court to weigh considerations of compensation and deterrence. *Oravec*, 2010 WL 1302914, at *8. "[I]t does not promote the purposes of the Copyright Act to award attorney fees to a prevailing defendant when the plaintiff has advanced a reasonable, yet unsuccessful claim." *Corwin*, 2008 WL 754697, at *12. A party who asserts unreasonable or bad faith arguments, however, should be deterred from doing so by paying the fees that the prevailing party incurred. *Oravec*, 2010 WL 1302914, at *5.

As discussed above, Plaintiff's claim was objectively reasonable and was not frivolous. *See Malibu Media*, *LLC v. Pelizzo*, 604 F. App'x 879, 881 (11th Cir. 2015) (finding considerations of compensation and deterrence "inextricably intertwined" with the reasonableness of the plaintiff's claims). Accordingly, Plaintiff (and others like Plaintiff) should not be deterred from litigating objectively reasonable claims based on fear of having to pay attorneys' fees. *See Luken*, 581 F. Supp. 2d 1226 at 1246 (in copyright context, noting that "a party that advances a reasonable position should not be deterred from doing so for fear that it will have to pay attorney's fees if it loses."). "A party that advances reasonable, good-faith positions should not be deterred from doing

so, even if ultimately unsuccessful, as such claims or defenses help define the scope and limits of copyright protection." *Strategic Mktg.*, 2017 WL 1224773, at *4 (citing *Oravec*, 2010 WL 1302914, at *8). Here, an award of attorney's fees to Defendant could chill copyright litigation. *See Indyne, Inc. v. Abacus Tech. Corp.*, No. 11-CV-137, 2013 WL 11312471, at *4 (M.D. Fla. Dec. 6, 2013). Accordingly, the undersigned concludes that this factor weighs in favor of Plaintiff and against an award of fees to Defendant.

### E.     Final Balancing

Having considered the *Fogerty* factors and the circumstances of this case, the undersigned concludes that all but one factor (degree of success in the action) weigh in favor of Plaintiff and against an award of fees to the prevailing Defendant.

### IV.    RECOMMENDATION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that Defendant's Motion (ECF No. 81) be **DENIED**.

Within **14 days** after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this District. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). Failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2022); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, on March 1, 2023.

_____
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge Rodney Smith
    All Counsel of Record